UNITED STATES, Appellee

v.

JOHN E. LAMERAND, Private, E–1, U. S. Army, Appellant

4 USCMA 702, 16 CMR 276

No. 4237

Decided October 1, 1954

Lt Col George M. Thorpe, U. S. Army, and 1st Lt Ronald C. Meteiver, U. S. Army, for Appellant.

Lt Col William R. Ward, U. S. Army, and 1st Lt Roderick V. Brown, U. S. Army, for Appellee.

## Opinion of the Court

Robert E. Quinn, Chief Judge:

A board of review affirmed the accused's conviction of embezzlement of United States postage stamps and stamped envelopes, valued at more than $200.00, in violation of Article 121, Uniform Code of Military Justice, 50 USC § 715. We granted review to consider the correctness of the law officer's instructions.

The accused was a postal clerk at APO 547, in Japan. On April 10, 1953, Captain J. V. Azevado, the postal officer, made a physical inventory of the stamp stock and cash in the possession of each of the postal clerks. In the presence of the accused, he audited the accused's account. The accused was charged with a $400.00 credit. The audit showed that he had $376.24 in stamp stock and $23.57 in cash. This represented a shortage of nineteen cents. Under the postal practice a shortage in such a minor amount could be made up by the clerk without further proceedings. Accordingly, the accused deposited nineteen cents to his account, and signed a new Fixed Credit Receipt for $400.00.

On the morning of April 18, the accused did not appear for duty. At an hour, not indicated in the record, his

absence was noted by Captain Azevado, who entered the accused's cage, and found two cash boxes, one of which was unlocked. In the unlocked box were stamped envelopes of the value of about $25.00. It being apparent to Captain Azevado that the accused was not going to appear for duty that morning, he telephoned the Deputy Adjutant General of the Corps for an officer to witness the opening of the locked box. In due course, Warrant Officer L. F. Carpenter appeared. He and Captain Azevado opened the box with a duplicate key taken from a sealed envelope, which was kept in the office safe. An inventory of the contents of the box, together with that of the unlocked box, showed a stamp stock of $158.49, and cash in the sum of $40.03, leaving a shortage of $201.48. On the afternoon of April 18, Captain Azevado spoke to the accused about the shortage, but the accused denied any knowledge of it.

The accused did not testify personally. However, the defense developed through cross-examination of Captain Azevado that, during the period from April 10 to April 18, he had observed the accused at the Post Office, and he believed that the accused was "very careless" in the performance of his postal duties. On one occasion, he reprimanded the accused for leaving his cash box too near the window of his cage.

At the close of the case, the law officer fully instructed the court on the elements of the offense, and on the presumption of innocence, the burden of proof, and reasonable doubt. No instruction was given on any lesser included offense. One specific request to charge, made by defense counsel, was denied. That request is as follows:

"If you believe that the funds alleged to have been stolen were lost through neglect rather than stolen, you will acquit the accused."

The accused contends that the law officer's instructions were erroneous in two respects: (1) that they should have included the elements of a loss of Government property by neglect, in violation of Article 108, Uniform Code of Military Justice, 50 USC § 702, as a

**704**

lesser included offense to that charged, and (2) that as requested they should have included the instruction on loss through neglect.

Before we consider the particular issues, we must determine the general question of whether loss by negligence was reasonably **raised** by the evidence. Unless so raised, an instruction on negligent loss, either as a lesser included offense or as an affirmative defense, need not be given. United States v. Hunter, 2 USCMA 37, 6 CMR 37; United States v. Sandoval, 4 USCMA 61, 15 CMR 61.

Captain Azevado testified the accused was "very careless" in the handling of his stamp stock and cash, and that he had to admonish him for keeping his cash box too close to the window of his cage. On the very morning the loss was discovered, one of the accused's cash boxes was left unlocked and exposed to view for an undetermined period. This evidence may not be sufficiently strong to require a different result in the ultimate findings on the guilt or innocence of the accused, but that is not the issue. The only question is whether it reasonably raises the issue of negligence. Any doubt in that connection must be resolved in favor of the accused. United States v. Floyd, 2 USCMA 183, 188, 7 CMR 59. Giving the evidence the full effect to which the accused is entitled, we conclude that loss by negligence was reasonably raised.

Turning to the accused's contentions, it is apparent that they are interdependent. The claim of negligence, as set out in the requested instruction, framed the issue on an either-or basis; that is, if the court believed that the property was stolen by the accused, it should convict, but if it believed that the accused's negligence caused the loss, it was to acquit. However, conviction or acquittal were not the only choices open to the court, if loss of Government property by neglect, proscribed by Article 108 of the Code, is a lesser included offense. In that case, the re-

quested instruction would be legally incorrect, and the law officer's refusal to give it would be unassailable. Thompson v. United States, 258 Fed 196, cert den 251 US 553, 64 L ed 411, 40 S Ct 57.

The general test for determining whether an offense is lesser included is stated in paragraph 158 of the Manual: "An offense found is necessarily included in an offense charged if all of the elements of the offense found are necessarily elements of the offense charged." In United States v. Davis, 2 USCMA 505, 509, 10 CMR 3, we pointed out that this provision is "intended merely to furnish a working test." The emphasis in each case must be on the "facts stated and proved in support of the offense alleged." Ibid page 508. And, it must appear that the offenses are substantially of the same kind "so that the accused is fairly apprised of the charges he must meet." United States v. Duggan, 4 USCMA 396, 15 CMR 396.

The specification on which the accused was tried reads as follows:

"In that [the accused] . . . did, at APO 547, Camp Sendai, Japan, from about 10 April 1953 to about 18 April 1953, steal United States Postage Stamps and Stamped Envelopes of a value of Two Hundred and One Dollars and Forty-eight cents ($201.48), property of the United States."

We are of the opinion that under this specification, no accused person could reasonably understand that he also must defend against a charge of losing the same property. Indeed, this latter possibility might immediately recommend itself as the best line of absolute defense. Unquestionably this was true in the instant case. From the beginning, defense counsel sought to show by the prosecution's principal witness that the Government's deprivation resulted from the neglect of the accused rather than from this theft.

Although possible, it is doubtful that the accused would embark so unreservedly on a course of seeking to inject a reasonable doubt as to his guilt of the crime by showing guilt of an included offense, if he had been on notice that it was included. It is quite probable, too, that having such notice, the accused would attempt to contend that the stamps in question were not "military property of the United States" within the meaning of Article 108. See Manual for Courts-Martial, United States, 1951, paragraph 187c. In this connection, we note that the phrase "military property of the United States" appears in each of the sample specifications under Article 108 although it is missing from the allegations of the present one. See Manual, supra, Appendix 6c, Form Specifications 66, 67, 68.

Moreover, it is clear that proof of embezzlement, which is the offense here alleged, does not require the establishment of every element of the offense of negligent loss. See United States v. Parker, 3 USCMA 541, 13 CMR 97. In prosecuting under Article 121, a trial counsel would certainly not be required, and he probably would not desire, to prove that the accused lost the property in question. Yet the establishment of this element is essential for conviction of negligent loss as a lesser included offense. In view of our comments concerning the paramount importance of the proof adduced "in support of the offense alleged," United States v. Davis, supra, and "the allegations of the specifications and proof in support thereof," United States v. Duggan, supra, we find it significant that the offense of negligent loss was "supported" solely by evidence produced by the defense.

The accused relied on the supposition that a showing of negligent loss would be a complete defense to the crime charged. Defense counsel's closing argument, and his request for instructions, stemmed from that premise. As previously indicated in his requested instruction, he framed the claim of negligence on an either-or basis. We are of the opinion that the accused was justified in such an approach. The specification does not allege an offense of negligent loss in that it does not fairly apprise the accused that he must defend against such a charge. In the light of the pleadings and the evidence, we conclude that the law officer erred

prejudicially in rejecting the instruction requested by the defense, or, at least, in failing to embody the same theory in an instruction phrased in his own language. United States v. Sandoval, supra.

The decision of the board of review is reversed and a rehearing is ordered.

Judge BROSMAN concurs.

LATIMER, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I concur with the majority holding that negligent loss of property is not an included offense of the ■■■■■■ ■ crime of larceny founded on embezzlement. The dissimilarity in the offenses is so pronounced that accused would not be apprised fairly that he must defend against the lesser crime. I do not, however, agree with the conclusion that the failure to give the requested instruction was prejudicial error and my reasons are twofold.

The instructions given by the law officer require a finding on accused's alleged theory that the property was lost through negligence. My associates are attempting to perpetuate a principle with which I previously disagreed, and I would not again dissent if it were not for my belief that the two concepts, namely, (1) a deliberate taking or withholding of property without authority, with intent to deprive the owner permanently, and (2) that of having unintentionally deprived an owner of his possession by carelessness, are so at variance as to be mutually exclusive. If the concepts are hostile to each other then, when the members of the court-martial found a deliberate taking or withholding with specific intent to deprive the Government permanently of its property, that finding would necessarily encompass a finding that the loss could not have been occasioned by negligence.

My second, and the most important, reason for dissenting arises from my belief that there is no evidence to support accused's alleged theory of negligent loss. The Manual for Courts-Martial, United States, 1951, paragraph 138a, provides in part as follows:

"It may be presumed that one who has assumed the custody of the property of another has stolen such property if he does not or cannot account for or deliver it at the time an accounting or delivery is required."

In United States v. Valencia, 1 USCMA 415, 4 CMR 7, we placed our stamp of approval on that language and it applies in this instance. Accused, however, seeks to avoid any inference arising from his failure to account by contending that the evidence could be interpreted to support his theory of negligence. He made no attempt to connect the loss with any act or acts of negligence, but one Government witness testified to three possible evidentiary items which must be considered to determine a factual basis to support his theory. They are: (1) a conclusion by an officer that the accused ran the affairs of his office in a negligent manner; (2) a reprimand was given the accused by the postal officer for leaving his funds too near the cage window; and (3) a cash box was found unlocked on the morning the shortage was discovered. I can assume, for the purposes of this case, that the three items constituted some evidence to support a finding that accused was not a careful operator, although there is no showing that after he was given the reprimand, he did not improve his habits. However, I find no causal connection between his alleged carelessness and the loss of the particular funds. It is mere speculation to surmise the property was lost through any negligent act. If the record is scanned for lack of due care, and it is present, it should be easy to ascertain what accused failed to do that caused the loss. Did he leave the cage unlocked? Did he leave the box out the evening before? Did he keep any money in the unlocked box? Did he discover any shortage during the eight-day period? Did he leave the box too near the cage window on the night before the disclosure? Did he balance his accounts each day? Did the loss occur on the evening before the discovery? Just how did accused mishandle his funds during the period?

None of the questions are answered by the record and if it can be said he had a theory, it was as broad as the imagination of counsel. Could he not just as well assert a hypothesis that the loss was caused by burglary, larceny by a third person, or embezzlement by others working in the Army Post Office? Many other questions could be posed, but they too would remain unanswered.

A theory must be confined within some limits by the evidence and here I find none. While an accused is entitled to an instruction on his theory of a case, I understand that rule to require something more than speculation to support it. Either the accused is guilty of larceny or not guilty. All members of the court agree the evidence is sufficient to support the findings made and while the court-martial could have returned a finding of not guilty because it believed the evidence did not establish a specific intent to deprive the Government permanently of its property, the law officer was not required to cover the asserted theory as he was presented with no facts to support it.