UNITED STATES, Appellee

v

WILLIE L. HOPKINS, Staff Sergeant, U. S. Marine Corps, Appellant

7 USCMA 519, 22 CMR 309

No. 8853

Decided January 18, 1957

*Lieutenant (jg) W. W. McNeilly, Jr.*, USNR, argued the cause for Appellant, Accused. With him on the brief were *Major Gerould M. Rumble, Jr.*, USMC, and *Lieutenant (jg) Mitchell W. Rabbino*, USNR.

*Major Charles R. Larouche*, USMC, argued the cause for Appellee, United States.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

As this case comes before us, the accused stands convicted by general court-martial of having made a false official statement, in violation of Article 107, Uniform Code of Military Justice, 10 USC § 907, and failure to account for certain Postal funds, in violation of Federal law, which in turn was a violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to bad-conduct discharge, partial forfeitures, confinement for one year, and reduction to the grade of private. Intermediate appellate agencies have affirmed, and we granted review on the sole issue of whether the law officer erred in admitting a pretrial statement made by the accused. Only the essential facts will be set forth herein.

On February .7, 1955, the accused, who had been designated an assistant Navy mail clerk about a year and one-half earlier, received and signed for $2,000 in stamps, cash, and paid money orders in his fixed credit stamp account as mail clerk for a Marine Air Group post office. While occupying that assignment, he was subject to the Postal laws and regulations of the United States. Monthly audits indicated that he held $2,000 until the audit of August 31, 1955. The audit for that month, which was required by appropriate regulations, was conducted by Lieutenant L. J. Brzezinski and proceeded without incident until the officer undertook a physical count of the assets on hand, at which time the following development occurred. We set it out in the words of the Lieutenant:

". . . [I] had reached the figure of $1,200 and some odd dollars, [in

my count of the funds and] I asked Hopkins, where is the rest of it. He said he had a money order report form in his hand, in the file, he said to me, Lieutenant, come on and sit down here at the desk, I've got something to tell you. So I said, what's that. . .

. . . . .

". . . he said, well, I'm short this money. Well, it sort of took me by surprise. I didn't know what he meant. I said, what do you mean, and he said, well, it happened a long time ago, . . ."

Thereafter, the accused informed the Lieutenant that some $2,100 in money order funds had been stolen from him in April 1955, as a result of his own negligence; that he had not reported the loss; and that he had managed to conceal the matter for some time by borrowing money and juggling his accounts. Lieutenant Brzezinski did not at any time warn the accused of his rights in accordance with Article 31 of the Code, 10 USC § 831, and the problem of moment is whether he should have done so.

## II

Article 31(b) of the Code, the only portion of the enactment which is pertinent here, provides as follow:

"No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial."

When this language is applied to the case before us, the question narrows to one of whether the accused was "a person suspected of an offense," for we are in agreement that an incriminating statement made in response to a question not asked for the purposes of crime detection or with intent to aid such an investigation, directed to one who is neither accused nor suspected of an offense, is not rendered inadmissible by the lack of a prior warning. United States v Taylor, 5 USCMA 178, 17 CMR 178; United States v Williams [CM 364607], 11 CMR 521, 526–527. Thus, if the Lieutenant had no cause to suspect the accused of an offense at the time when the admission was made, no duty to warn arose, and the absence of advice as to his rights under that statute would not render the statement inadmissible.

We need not concern ourselves here with any attempt to determine admissibility as an original proposition, for it is enough if the law officer's ruling is supported by substantial evidence. As we said in United States v Webb, 1 USCMA 219, 222, 2 CMR 125:

". . . To fulfill our appellate responsibility, it is certainly incumbent on us to review the circumstances surrounding the making of the allegedly involuntary statement. However, where there is conflict in the evidence as to whether imputed improper acts actually occurred, or where conceded facts reasonably permit varying inferences, the law member or law officer—that is, the 'judge' of the court-martial—is not only better equipped for the purpose, but labors under a legal duty to weigh the evidence and to determine whether the confession is, in fact, admissible. Indeed, we must accept his resolution of the question of admissibility when it is supported by substantial evidence, regardless of whether we as individual lawyers might resolve the controverted question otherwise or draw other inferences from the facts."

Accordingly, if there is substantial evidence from which the law officer could fairly conclude that no duty to warn arose, we are not free to overturn his ruling, for no question of duress or coercion is raised by the evidence.

At the time when accused chose to unburden his conscience, Lieutenant Brzezinski was conducting a routine audit of accused's postal account. This the

521

Lieutenant was required by regulations to do monthly, without warning, and on no set date. His function was to ascertain whether duties in connection with postal affairs were properly performed and not to investigate offenses. By the same token, the accused had a positive duty to account for the Government funds committed to his care, and to submit to audits by military authorities. Lieutenant Brzezinski was not acting on the basis of a "tip" or rumor of any sort, and he had not been given cause to believe that the accused's accounts might not be in order. The accused had been a postal clerk for some time, and there is nothing to indicate that he had ever previously defaulted in the performance of his duties. In short, there is nothing to suggest that this audit did not occur except as a matter of routine. Hence, it is clear that the auditor had no cause to warn the accused of anything when he began his count.

That brings us to the question of whether the accused was "a person suspected of an offense" at the time when the Lieutenant asked the question which elicited the pretrial confession. We think not—at least, not as a matter of law. Certainly it seems apparent that Brzezinski himself did not suspect that an offense had been committed when he asked to be shown the rest of the fund. He so testified, and his testimony further indicates that he was surprised and stunned by the nature of accused's disclosure. There is no evidence to rebut the Lieutenant's explanation, and we cannot say that he displayed such a degree of naivete or artlessness that the law officer was bound to regard it as unreasonable.

Perhaps a very suspicious person in the Lieutenant's position might have suspected the accused immediately, but we cannot quarrel with the law officer's apparent decision that a fair mind would not be obliged to suspect the accused at the time when the auditor asked for a further accounting. The missing funds might have been represented by a stamp requisition which was then in transit, paid money orders might have been as yet uncounted, overlooked, or misplaced, or perhaps a mere error in either the count or necessary calculations had occurred. There were at least several innocent explanations of the location of the missing money, and Brzezinski undoubtedly intended his inquiry to elicit an answer which did not evidence wrongdoing on the part of the accused. While it is argued that the Lieutenant was required to interrupt the accused before his tale was completed, we cannot agree. The accused's explanation included both exculpatory and inculpatory statements, and we cannot demand a degree of perception such that the listener must assess the nature of the statement before its completion.

The decision of the board of review must be, and is, affirmed.

Chief Judge QUINN and Judge FERGUSON concur.