UNITED STATES, Appellee

v

LARRY M. ARONSON, Airman First Class, U. S. Air Force, Appellant

8 USCMA 525, 25 CMR 29

Decided December 27, 1957

*Lieutenant Colonel Stanley S. Butt, Lieutenant Colonel R. W. Dech* and *Major Dwight R. Rowland* were on the brief for Appellant, Accused.

*Lieutenant Colonel Francis P. Murray* and *Captain John W. Fahrney* were on the brief for Appellee, United States.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was convicted of larceny and two specifications alleging a violation of Article 107, Uniform Code of Military Justice, 10 USC § 907. His appeal is concerned with the latter offenses and with the correctness of the board of review's action in regard to the sentence.

From the evidence it appears that the accused was entrusted with money belonging to the Base Trailer Park Fund, Laughlin Air Force Base, Del Rio, Texas. A shortage in the fund was discovered during an audit by a base auditor. The matter was referred to the Office of Special Investigations and an agent was assigned to investigate. He questioned the accused. Before asking any questions, he informed the accused of the purpose of the investigation and of the provisions of Article 31, Uniform Code of Military Justice, 10 USC § 831. In the course of interrogation the accused said: "I didn't remove any [money] or take any of the money and anything I can do to help I will." A few days later he signed a written statement which contained substantially the same assertion. Subsequently, he confessed that he took money from the fund. The present charges were then brought against him.

Article 107 provides that:

"Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing the same to be false, or makes any other false official statement knowing it to be false, shall be punished as a court-martial may direct."

The Government contends that the accused's statements constitute "official" statements within the meaning of the Article. In part, it relies upon our decision in United States v Brumfield, 4 USCMA 404, 15 CMR 404, and United States v Gomes, 3 USCMA 232, 11 CMR 232. However, neither case provides support for the Government's broad assertion that every intentional false statement to a law enforcement agent falls within the prohibition of Article 107, supra. In the *Brumfield* case the question was not before us, and the opinion makes no mention of the matter. In *Gomes* the accused was charged with conduct unbecoming an officer and gentleman; the specification did not allege that the false statement was "official." Consequently, neither case is "controlling." United States v Hutchins, 5 USCMA 422, 425, 18 CMR 46. Moreover, in several recent cases, a majority of the Court specifically reserved decision on that point. United States v Arthur, 8 USCMA 210, 24 CMR 20; United States v Gunnels, 8 USCMA 130, 23 CMR 354; United States v Price, 7 USCMA 590, 23 CMR 54.

In United States v Hutchins, supra,

we reviewed the legislative background of the Article. We pointed out the existence of a "general analogy" between the language of Article 107 and that of § 1001 of Title 18 of the United States Code which prohibits the knowing and willful making of a false or fraudulent statement in "any matter within the jurisdiction of any department or agency of the United States." We concluded that the purpose of both statutes was the same. Relying in part upon the construction accorded § 1001 by the United States Supreme Court in United States v Gilliland, 312 US 86, 93, 85 L ed 598, 61 S Ct 518, we held that Article 107 is intended to protect the authorized functions of Government agencies from the perversion which might result from the prohibited practices. We reiterated that view in United States v Arthur, supra. However, in fixing the purpose of Article 107 we did not define its scope. We are brought then to the question, what did Congress mean by the words "official statement."

In keeping with our earlier analysis it seems to us that the word "official" used in Article 107 is the substantial equivalent of the phrase "any matter within the jurisdiction of any department or agency of the United States" found in § 1001. This approach brings into focus the decisions of the Federal courts on the meaning of § 1001.

One Federal court has held that there is no violation of § 1001 when the person making the statement is "under no legal obligation to give information." United States v Levin, 133 F Supp 88, 90 (D Colo) (1953). Circuit Judge Pickett, sitting in the district court, dismissed an indictment based upon an alleged false statement to a Federal Bureau of Investigation agent investigating a violation of the National Stolen Property Act. Parenthetically, it should be noted that the same idea seems to be implied in the Manual's discussion of Article 107. It is there said that the relative rank of the person intended to be deceived is immaterial "if that person *was authorized in the execution of his office to require the statement or document from the accused.*" (Emphasis supplied.) Another Federal court has held that unless the statement is to, or for, an agency that has power *to decide and act* upon a particular matter, it is not within the scope of § 1001. United States v Stark, 131 F Supp 190 (D Md) (1955). As a result, the court dismissed an indictment alleging a false statement to a Federal Bureau of Investigation agent investigating the alleged bribing of a Federal Housing Administration employee. On the other hand, Marzani v United States, 168 F2d 133 (CA DC Cir) (1948), which was affirmed by the United States Supreme Court by a four-to-four vote, 335 US 895, and Cohen v United States, 201 F2d 386 (CA9th Cir) (1953), seem to look to a broader application of the section. In the same class is United States v Silver, 235 F2d 375 (CA2d Cir) (1956). There, without discussion of the applicability of § 1001, the Court of Appeals for the Second Circuit upheld the defendant's conviction on two counts, each alleging a false official statement. Both statements were made to a special agent of the Internal Revenue Service investigating the defendant, an employee of the Service, for the alleged receipt of bribes.[1] These cases support conviction here, but not the Government's sweeping generalizations. As to scope of Article 107, we prefer to place affirmance of the accused's conviction "squarely upon the premise that the statement was made in pursuance of statutory requirements." Knowles v United States, 224 F2d 168 (CA 10th Cir) (1955).

The accused was entrusted with the funds of the Base Trailer Fund which was under the general custodianship of a Lieutenant John M. Watson. This fund was a nonappropriated fund defined under Air Force regulations as a "sundry fund," and is classified as

---

[1] One of the counts charged that the defendant falsely stated that he had not seen one Carol Anderson, early in 1953. The second count alleged that the defendant lied when he denied using an alias.

an "instrumentalit[y] of the United States." AFR 176–1, paragraph 2. The fund is subject to official audit. AFR 177–9, paragraph 7–8; AFR 21–5. When it is apparent that such a fund has suffered a loss, the installation commander "is responsible for requesting an investigation and taking appropriate action." AFR 176–8, paragraph 17. The regulation also provides that if it appears the loss is due to "fraud, dishonesty, or willful misconduct" the commander "will refer appropriate cases to the Office of Special Investigations (OSI)." Under its enabling regulation that agency provides *"criminal . . . and special investigative service* to all Air Force activities." AFR 124–1, paragraph 3. One of its functions is to forward "final reports on completed investigations to interested commanders for appropriate action."

Here an audit disclosed a deficit of over $500 and an Office of Special Investigations agent was detailed to investigate the loss. A false statement to him regarding the stewardship of the fund could affect the nature of his report to the base commander and the latter's action on the report. Thus, from the Government's standpoint there was "power . . . [in] that particular agency to administer and enforce the law." Carroll Vocational Institute v United States, 211 F2d 539, 540 (CA 5th Cir) (1954). As to it, the accused's statement was plainly official.

The interview between the accused and the Office of Special Investigations agent also bore the stamp ▄ of officiality from the accused's point of view, Being entrusted with the fund he was bound to account for it. United States v Valencia, 1 USCMA 415, 4 CMR 7. The obligation to account came into existence at the very inception of his duties. Referring to a similar situation we said in United States v Hopkins, 7 USCMA 519, 522, 22 CMR 309: "the accused had a positive · duty to account for the Government funds committed to his care, and to submit to audits by military authorities." Thus, from the very moment he assumed control over the fund the ac-

cused was, in the language of Judge Pickett in the Levin case, supra, page 91, "under legal obligation to speak."

However, the accused contends that when a loss occurs under suspicious circumstances, his duty to ▄ account is superseded by the provisions of Article 31 of the Uniform Code. Cf. United States v Hopkins, supra. He maintains that under Article 31 he "does not have to make any statement regarding the offense of which he is accused or suspected," and, consequently, whatever he said to the agent was not said in response to a legal duty. We are not persuaded by this argument. Article 31 and Article 107 are not incompatible.

The obligation to account for what is entrusted to one is independent of Article 31. If the duty to account is affected by Article 31 it is only to the extent that the accused cannot be compelled to make a statement about the account. But he certainly remains liable, civilly or criminally as the case may be, for misconduct in regard to the funds entrusted to him. AFR 176–8, paragraphs 20, 21; United States v Sicley, 6 USCMA 402, 20 CMR 118; United States v Lamerand, 4 USCMA 702, 16 CMR 276; United States v Valencia, supra. Surely, Congress did not intend Article 31 to be a license to lie. The legislative background of the Article shows that it was intended to protect persons accused or suspected of crime who might otherwise be at a disadvantage because of the military rule of obedience to proper authority. Gibson v United States, 3 USCMA 746, 14 CMR 164. It would be a perversion of that intention to construe Article 31 as a protection against intentional and willful deception in accounting for Government funds. The accused here had a choice. He could refuse to make any statement to the agent or he could account for his management of the fund. If he chose the first course, he would be acting in accordance with and under the protection of Article 31. But, if he chose the second alternative and spoke, he spoke in accordance with his "legal obligation." Cf. United States v Levin, supra. Whether judged from

the Government's position or from the accused's standpoint, the questions asked by the agent and the answers given by the accused were "official" within the meaning of Article 107. We therefore, affirm the findings of guilty as to specifications 1 and 2 of Charge II.

The situation here, therefore, is not at all comparable to one in which a person suspected or accused of a crime unrelated to any duty or responsibility imposed upon him gives a statement to a law enforcement agent investigating the alleged offense. In the latter instance the agent has no right or power "to require the statement" from the accused. See Manual for Courts-Martial, United States, 1951, paragraph 186; United States v Williams, 2 USCMA 430, 9 CMR 60. And the accused has no obligation whatsoever to give the statement to the agent. From the accused's standpoint, therefore, the statement has no officiality. Moreover, from the standpoint of the Government the statement, however false, is hardly calculated to pervert the function of the investigating agency. On the contrary, the only possible effect a statement received from a suspect or an accused can have is to stimulate the agency to carry out its function, namely to discover the person or persons who have committed the offense. We can hardly imagine that an agent would accept a statement from such a person and conclude from its contents that the investigation should be closed, unless that statement constitutes a confession or a substantial admission of the offense charged. A statement which is not a confession or a substantial admission can only lead to further investigation to discover the facts—and that is the very purpose of the agency. Manifestly, therefore, there is no "perversion" of the Government's criminal investigative function. Whatever offense the accused might commit by lying under these circumstances, his statement is not "official" within the meaning of Article 107.

Insofar as the second assignment of error is concerned, we conclude that under the circumstances of this case, the board of review effectively cured the error in the law officer's instructions on the sentence. United States v Reiner, 8 USCMA 101, 23 CMR 325. Consequently, we affirm the decision of the board of review.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

In the principal opinion, my associates discuss the officiality of an Article 31 interrogation. As a consideration of that question is not necessary for the disposition of this case, I will reserve my opinion until that time when it is properly presented to this Court.