UNITED STATES, Appellee

v

REUBEN J. COLLIER, JR., Specialist Five, U. S. Army, Appellant

No. 27,994

June 28, 1974

*Captain Dennis D. Daly* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick* and *Captain Lawrence I. Wagner.*

*Captain Keith H. Jung* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Donald W. Hansen* and *Captain Robert C. Roth, Jr.*

## OPINION OF THE COURT

DUNCAN, Chief Judge:

The appellant was convicted of two offenses of wrongful appropriation, and of one specification each of making a false official statement, uttering a bad check, failure to repair, and disobedience of a superior noncommissioned officer. Our grant of review extends only to the charge brought under Article 107, Uniform Code of Military Justice, 10 USC § 907,[1] and requires us to decide whether a conviction for making a false official statement can rest upon a statement which the accused was under no duty to make. Under the facts of the case *sub judice,* we determine that it can.

On August 25, 1972, the accused reported to the military police at Fort Bliss, Texas, that a stereo reverberator unit had been stolen from his automobile parked on post. This report was made about 11:00 a.m. However, other evidence established that the accused had pawned the unit earlier that day.

The U. S. Army Court of Military Review upheld his conviction of making a false official statement on the ground that "Article 107 should be construed as being sufficiently broad to encompass the making of a false report of a crime to a military investigative agency." The Court of Military Review reasoned that as the purposes underlying Article 107 had been equated with the purposes of the federal false statement statute, 18 USC § 1001, by this Court's decision in United States v Hutchins, 5 USCMA 422, 18 CMR 46 (1955), and as the federal statute has been interpreted to include false reports of crime to federal law enforcement agencies, United States v Bedore, 455 F2d 1109 (9th Cir 1967); United States v Adler, 380 F2d 917 (2d Cir 1967), military courts should apply Article 107, UCMJ, so as to reach the

---

[1] Article 107 provides:

Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing the same to be false, or makes any other false official statement knowing it to be false, shall be punished as a court-martial may direct.

conduct of the accused. The Court of Military Review rejected other federal cases that construed the federal statute more narrowly, *e.g.,* Friedman v United States, 374 F2d 363 (8th Cir 1967), in which the term "jurisdiction" in 18 USC § 1001 was held to exclude the investigatory aspects of the FBI. The Court of Military Review found persuasive the argument that the initiation of a false report of a crime should be distinguished from false statements capable of defrauding the Government, or those made in furtherance of a military duty. Found to be "compelling" in support of a broad interpretation of Article 107, UCMJ, were "the possible implications arising from false statements made in a combat environment."

Appellate defense counsel assail such reasoning as inconsistent with our decisions in United States v Osborne, 9 USCMA 455, 26 CMR 235 (1958), and United States v Aronson, 8 USCMA 525, 25 CMR 29 (1957), where the official nature of a statement was held to depend on an "obligation . . . to give the statement," United States v Aronson, supra at 530, 25 CMR at 34, or a "duty which obligates him [the accused] to speak truthfully," United States v Osborne, supra at 457, 26 CMR at 237.

In *Osborne,* an officer interviewing the accused became suspicious that he was involved in criminal activity, gave him the appropriate Article 31 warning, and proceeded with the interview. During the interview, Osborne was alleged to have made false statements concerning his prior record of civilian arrests and military courts-martial with intent to deceive. In reversing his conviction for making false official statements with intent to deceive, in violation of Article 107, UCMJ, a majority of this Court relied on United States v Aronson, supra. The Court also cited United States v Washington, 9 USCMA 131, 25 CMR 393 (1958), and United States v Arthur, 8 USCMA 210, 24 CMR 20 (1957). In *Aronson,* the accused, like Osborne, was suspected of a crime, given Article 31 warnings, and then interrogated. Aronson was convicted of a violation of Article 107, the trial court having found that during his interrogation the statements that he made were official, as contemplated by the statute, and false. This Court affirmed and stated:

Relying in part upon the construction accorded § 1001 by the United States Supreme Court in United States v Gilliland, 312 US 86, 93, 85 L Ed 598, 61 S Ct 518, we held that Article 107 is intended to protect the authorized functions of Government agencies from the perversion which might result from the prohibited practices.

United States v Aronson, supra at 528, 25 CMR at 32. Unlike Osborne, Aronson as a part of his duties had a duty to account for certain funds that were missing. Concerning any conflict the duty to account may have had with Article 31, the Court stated:

> The obligation to account for what is entrusted to one is independent of Article 31. If the duty to account is affected by Article 31 it is only to the extent that the accused cannot be compelled to make a statement about the account. But he certainly remains liable, civilly or criminally as the case may be, for misconduct in regard to the funds entrusted to him. . . . Surely, Congress did not intend Article 31 to be a license to lie.

United States v Aronson, supra at 529, 25 CMR at 33.

Commenting on a different fact pattern, such as arose later in *Osborne,* the Court in *Aronson* related:

> The situation here, therefore, is not at all comparable to one in which a person suspected or accused of a crime unrelated to any duty or responsibility imposed upon him gives a statement to a law enforcement agent investigating the alleged offense. In the latter instance the agent has no right or power "to require the statement" from the accused. See Manual for Courts-Martial, United States, 1951, paragraph 186; United States v Williams, 2 USCMA 430, 9 CMR 60. And the accused has no obligation whatsoever to give the statement to the agent. From the accused's standpoint, therefore, the statement has no officiality. Moreover, from the standpoint of the Government the statement, however false, is hardly calculated to pervert the function of the investigating agency. On the contrary, the only possible effect a statement received from a suspect or an accused can have is to stimulate the agency to carry out its

function, namely to discover the person or persons who have committed the offense. We can hardly imagine that an agent would accept a statement from such a person and conclude from its contents that the investigation should be closed, unless that statement constitutes a confession or a substantial admission of the offense charged. A statement which is not a confession or a substantial admission can only lead to further investigation to discover the facts—and that is the very purpose of the agency. Manifestly, therefore, there is no "perversion" of the Government's criminal investigative function. Whatever offense the accused might commit by lying under these circumstances, his statement is not "official" within the meaning of Article 107.

8 USCMA at 530, 25 CMR at 34.

We believe this rather lengthy review of the *Aronson-Osborne* line of cases is necessary to illustrate that they do not constitute precedent to the effect that *only* statements required to be made as a part of official duty are actionable under Article 107, UCMJ. These cases hold that, after Article 31 warnings have been given, unless there is an independent official obligation to speak, false statements made by suspects were not intended to be made criminal under Article 107. Once the Government suspects a person of a crime, there is no obligation on that person to assist in his prosecution. The Government's law enforcement agents have the duty to gather evidence designed to convict beyond a reasonable doubt. No perversion of their duties can reasonably be assigned to a lying accused since it would be unrealistic to imagine Government agents relying on what an accused has said as a replacement for their fact collecting function.

Appellant's false report of the theft of his stereo reverberator unit is distinctly different. It was a voluntary report by a person not suspected of a crime. Thus the rationale of the *Osborne-Aronson* line of cases, bottomed as they are on the provisions of Article 31, is not applicable.

Having voluntarily undertaken to report the theft of his stereo, appellant assumed the obligation to report it truthfully. The report of a crime to law enforcement personnel carries with it indicia of officiality. Upon receipt of such a report it is reasonable to assume that the agency will take action in an effort to apprehend the criminal and recover the stolen property. A service person has an obligation not to pervert the Government machinery designed to accomplish that goal. Making a false report which triggers this machinery into needless acts is a perversion of investigatory processes which was intended by Congress to be punishable under Article 107.

Our conclusion that the report of a crime is an official statement within the purview of Article 107 finds support in the interpretation of the analogous federal statute, 18 USC § 1001, by the United States Court of Appeals for the Second and Ninth Circuits. United States v Bedore, supra; United States v Adler, supra. See also United States v Hutchins, supra. In *Bedore,* the court found that false reports of crime made to federal law enforcement agencies might engender groundless federal investigations and thereby frustrate the congressional intent to protect authorized functions of governmental departments and agencies from the perversion which would result from the deceptive practices described. See United States v Gilliland, 312 US 86 (1941). See also United States v Adler, supra, concerning a false report of bribery made to an FBI agent, and Tzantarmos v United States, 402 F2d 163 (9th Cir 1968); *cf.* Friedman v United States, supra.

In United States v Geib, 9 USCMA 392, 26 CMR 172 (1958), certain instances were mentioned in which there was an official duty to act. We stated that false statements in regard to entries in one's personal history statement or other official forms could be the proper subjects of prosecution under Article 107. Obviously, we stand by such comments, but they were exemplary in nature and we perceive nothing in them tending to limit the scope of the Article. Accused's false statement here is well within its perimeter.

Accordingly, the decision of the Court of Military Review is affirmed.

Judge QUINN and Senior Judge FERGUSON concur.