**UNITED STATES, Appellee,**

v.

**2d Lieutenant Kirby L. DeWAYNE, SSN 538–52–8061, United States Army, Appellant.**

**CM 437061.**

U. S. Army Court of Military Review.

18 May 1979.

Captain Paul T. Allen, Jr., JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, and Captain Grifton E. Carden, JAGC.

Captain William J. Douglas, JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, and Major David McNeill, Jr., JAGC.

Before MITCHELL, DRIBBEN and FELDER, Appellate Military Judges.

## OPINION OF THE COURT

PER CURIAM:

The appellant was tried for three separate offenses of larceny and one offense each of dereliction of duty and signing a false official statement, in violation of Articles 121, 92 and 107, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 921, 892 and 907. He was found not guilty of the larceny offenses but convicted of dereliction of duty and signing a false official statement. A military judge sitting alone as a general court-martial sentenced him to dismissal from the service and forfeiture of $500.00 per month for six months. The convening authority approved the sentence without modification.

The first error assigned by the appellant is that the record of trial is nonverbatim because a substantial portion of the record was reconstructed due to a malfunction in the recording equipment. The challenged portions of the record include sixteen pages of testimony by a prosecution witness concerning the appellant's consent to search his room, the witness's identification of certain prosecution exhibits that formed the basis of the larceny charges and the dereliction of duty offense, and his identification of hand receipt forms introduced to prove the appellant's guilt of signing a false official statement. Four additional pages of testimony by the appellant and a defense character witness were also reconstructed.

We find that the procedures followed in reconstructing portions of the record in this case so minimized the possibility of error that the reconstruction provided a verbatim transcript. Unlike the cases of *United States v. Weber*, 20 U.S.C.M.A. 82, 42 C.M.R. 274 (1970); *United States v. Boxdale*, 22 U.S.C.M.A. 414, 47 C.M.R. 351 (1973); and the Memorandum Opinion and Order of the Court of Military Appeals in *United States v. Averett*, 3 M.J. 201 (CMA 1977), defense counsel in the instant case was not only invited to participate in the reconstruction, but actually provided sub-

stantial input into the reconstructed portions of the record.[1] Such a procedure avoids a one-sided recall of events that transpired at trial and the possibility of prejudicial error that may occur when a record is reconstructed "after the fact" by the trial counsel and court reporter who have the appearance of representing only the legal and administrative interests of the Government. *See also United States v. Pearson*, 6 M.J. 953 (A.C.M.R.1979).

■ The appellant's second assignment of error attacks the sufficiency of the evidence to support his conviction for signing a false official statement in violation of Article 107, Uniform Code of Military Justice, 10 U.S.C. § 907.

■ The elements of proof for this offense are that (a) the accused signed a certain official document or made a certain official statement, (b) the document or statement was false in certain particulars, (c) the accused knew it to be false at the time of its making, and (d) the statement was made with intent to deceive. Paragraph 186, Manual for Courts-Martial, United States, 1969 (Revised edition); *United States v. Hutchins*, 5 U.S.C.M.A. 422, 18 C.M.R. 46 (1955).

■ We find that the hand receipts were required to be prepared by applicable Army regulations and represented property of the United States. As such, they were "concerned with a governmental function" and were official documents within the meaning of *United States v. Aronson*, 8 U.S.C.M.A. 525, 25 C.M.R. 29 (1957) and *United States v. Cummings*, 3 M.J. 246 (CMA 1977). Remaining for our consideration is whether the Government has proven beyond a reasonable doubt the elements of falsity. A somewhat detailed summary of the facts is necessary to resolve this issue.

■ The period from August through mid-October 1977 was a busy and often hectic time for the appellant. On 1 August 1977, he was appointed summary court officer to dispose of the personal effects of a deceased service member. Shortly thereafter, the bulk of his battalion departed on a Reforger exercise to Germany. Accompanying the battalion on this exercise were the regular S–4 Officer (a Captain) and the battalion property book officer. Left behind to administer the S–4 section were the appellant, a noncommissioned officer and two privates. The S–4 section was responsible for the distribution, storage and security of various military supplies and equipment for the battalion. The appellant's duties during this period turned out to be unexpectedly heavy, involving maintenance inspections, preparing supplies for shipment to the bulk of the battalion in Germany, issuing equipment to the remainder of the battalion at Fort Campbell, and conducting inventories. Obviously, appellant did not properly set his priorities; for he failed to meet a suspense date for completing his summary court duties and ultimately neglected to ship any of the deceased's property as he was required to do. This failure led to his conviction for dereliction of duty, for which we find sufficient evidence in support thereof.

In spite of his heavy duties, the appellant, in August 1977, took upon himself the transfer of various supplies and equipment of the battalion from a warehouse annex to storage bins that had been assigned to him and contained various amounts of his personal property. The purpose of the transfer, according to the appellant, was because the roof of the warehouse annex had been removed as a result of construction work and the appellant feared that the property contained therein would be left unsecured unless he took appropriate action. The appellant soon realized what the consequence of his seemingly conscientious act would be after the battalion began returning from the Reforger exercise in early October 1977.

On the evening of 11 October 1977, the storage bins were forcibly opened and the stash of government property together with

---

1. In the last line of his rebuttal to the staff judge advocate's review, trial defense counsel stated: "Also, the difficulty with recording equipment malfunction should be addressed in the post-trial review."

the items of personal property containing the appellant's identification were found. Based on this discovery, the appellant was apprehended and consent was obtained to search his room. The search revealed the presence of a pair of binoculars and additional government property. After the property was confiscated in the early morning of 12 October 1977, the keys to the S–4 section were taken from the appellant and he was placed on restriction. The pair of binoculars, and two major items of equipment found in the storage bins formed the basis of the three larceny charges of which appellant was acquitted.

The record is unclear as to what constituted the "additional government property" found in the appellant's room, where it came from, when it was taken, or what motivated the appellant to take this property. Apparently, the hand receipt forms which were introduced into evidence to prove the appellant's guilt for signing false official statements had been prepared by the appellant at some point in time in order to establish accountability for the government property found in his room.[2]

On 14 October 1977, the appellant informed two officers that exculpatory evidence in the form of hand receipts could be found in the S–4 property book officer's lower right desk drawer.[3] The property book officer testified that he cleaned out his desk on 13 or 14 October 1977 after his return from Reforger. Although not specifically looking for a folder containing the hand receipts described by the appellant, and conceding that it was possible that he could have overlooked this item, the property book officer testified that it was highly unlikely that he would have overlooked a folder that was protruding above the rest of the files in his drawer, and was marked

with a different colored pen. The military judge apparently placed considerable weight on this testimony, for he specifically found, by exceptions and substitutions, that the appellant had signed the hand receipts on or about 13 October 1977; that is that they were prepared and placed in the property book officer's desk by the appellant before the date originally alleged in the specification but after the property book officer had cleaned out his desk.

▆ During the course of the trial, the prosecution placed considerable emphasis on the manner in which the hand receipt forms had been prepared in an attempt to establish the elements of falsity and intent to deceive. In determining whether an act was done with an intent to deceive, a court may consider whether the act violated any law, regulation or code which establishes standards of conduct reasonably related to the specific issues in the case. *United States v. Morlang*, 531 F.2d 183 at 191 (4th Cir. 1975); *United States v. Mandel*, 415 F.Supp. 997 (D.C.Md.1976). In the instant case, the hand receipts prepared by the appellant omitted such items as the signature of the issuer, the page number of the receipt, and the specific purpose for the transaction. It was never established, however, by the testimony of the property book officer or by the terms of the regulation itself (AR 710–2 introduced into evidence as Appellate Exhibit III) that the appellant violated the regulation by issuing property to himself and preparing the corresponding hand receipts. From the particular facts of this case, we cannot find an inference of intent to deceive by the form in which the receipts had been prepared.

The omission of several of the items contained on the hand receipt form would have

---

2. The hand receipts indicated that a wide assortment of property had been issued to and received by appellant from 30 August to 7 October 1977. The property included such items as stencil sets, tape measures, 5 gallon gasoline cans, air hoses, handsaws, fire extinguishers, and batteries. We can only speculate that appellant desired to "secure" these items also. Ironically, he was not charged with the larceny of any of this property.

3. The first officer testified that he spoke to the accused on 14 October 1977. The second witness testified that the date was Friday, 17 October 1977. The Court took judicial notice of the fact that 14 October was on a Friday. We will assume, therefore, that the appellant informed these officers on 14 October 1977.

greater relevance to the issue of falsity and intent to deceive in a case wherein the appellant claimed that someone else had issued the items to him, or it was clear from the record that others having the authority to issue the property and sign the hand receipts were present and available to do so. Here, however, the appellant admitted that he signed the hand receipts to account for property in his possession and it was never established on the record that anyone else was in a position to render such a service. The appellant, in fact, appears to have been the highest ranking officer in the S–4 section during the period of time that the property was in his possession, and the most logical one in his position as assistant S–4 officer to have issued the property and signed the receipts.[4] If, therefore, the receipts were prepared on or about the time the appellant took possession of the property, he could not be found guilty of signing a false official statement.

Remaining for our consideration is whether the appellant prepared the receipts after he came into possession of the property and after he became aware that he was under investigation for larceny in an attempt to provide apparent legal accountability for the property found in his room. Put another way, if at the time the appellant prepared the receipts he knew that they were false, an intent to deceive is inferred. *United States v. Louderman,* 576 F.2d 1383 (1978); *United States v. Mandel, supra ; United States v. Dowling,* 18 C.M.R. 670 (AFBR 1954).

We are not convinced beyond a reasonable doubt that the appellant had the opportunity to prepare and plant in the S–4 property book officer's desk some 33 pages of hand receipts that described numerous kinds and quantities of property. These acts would have had to be taken sometime between the night of 11 October when the appellant was first apprehended and after 14 October 1977 when the appellant informed his commanders that the property receipts could be found in the property book

officer's desk of the S–4 section. During this period, the property in appellant's room was confiscated, the keys to the S–4 section were taken from him, and he was placed on restriction. Furthermore, the property book officer conceded that because he was not specifically looking for the hand receipts when he cleaned out his desk on 13 or 14 October 1977, he could have overlooked the folder containing these documents.

An Army psychiatrist testifying for the defense stated that the appellant felt overwhelmed by his job and was suffering from a reactive depression. Although not diagnosed as a kleptomaniac, the appellant's personality made him prone to make judgmental errors under pressure. The appellant's officer efficiency report for the period of May through October 1977 reflected similar observations. In the words of the appellant's rater and indorser ". . . at times of stress LT DeWayne exhibited a nervous disposition, a boisterous nature and easily agitated temperament. . . ." He is ". . . highly emotional and tends to become unstable when under severe stress. Judgment is impaired by his obtuse reasoning process. . . ."

We cannot affirm the findings of guilty for an act that represents an error in judgment only. The intent to deceive requires more.

For the foregoing reasons, the findings of guilty of Charge III and its specification are set aside and that Charge is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence based on the remaining findings of guilty, only so much of the sentence as provides for forfeiture of $500.00 pay per month for three months is affirmed.

4. Whether other officers in the battalion who did not go on Reforger were in a position to issue property and sign the receipts is not evident from the record.