MAY, Judge:
Appellant was convicted, pursuant to his pleas, by special court-martial of falsely signing an official document, larceny of a Navy Relief Society check and the making and uttering of a forged check in violation of Articles 107, 121 and 123, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 921, 923. He was sentenced by officer members to a bad-conduct discharge, confinement at hard labor for three months, forfeiture of $382.00 pay per month for three months, and reduction to pay grade E-l. The convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement at hard labor for three months, forfeiture of $210.00 per month for three months, and reduction to pay grade E-l, with the execution of the bad-conduct discharge suspended.
Appellant now assigns the following errors:
I
PLAIN ERROR OCCURRED WHEN THE MILITARY JUDGE FAILED TO SUA SPONTE DISMISS SPECIFICATION 1 OF CHARGE III (FORGERY OF A CHECK WITH INTENT TO DEFRAUD BY FALSELY MAKING A SIGNATURE) AS BEING UNREASONABLY MULTIPLICIOUS FOR FINDINGS WITH SPECIFICATION 2 OF CHARGE III (FORGERY OF THE SAME CHECK WITH INTENT TO DEFRAUD BY UTTERING THE CHECK) ONCE THE CONTINGENCIES OF PROOF WERE RESOLVED BY THE MILITARY JUDGE’S FINDINGS OF GUILTY FOR BOTH OFFENSES (R. 37). BOTH OF THE ALLEGED OFFENSES AROSE FROM THE SAME TRANSACTION IN THAT THE APPELLANT UTTERED THE CHECK AS SOON AS HE SIGNED IT (R. 25), THUS THE GRAVAMEN OF THE APPELLANT’S WRONGDOING WAS THE UTTERING OF THE FORGED CHECK. PARAGRAPH 266, MANUAL FOR COURTS-MARTIAL, 1969 (REV.); UNITED STATES V. BAKER, 14 M.J. 361 (C.M.A.1983); cf. UNITED STATES V. WARD, 15 M.J. 377 (C.M.A.1983); UNITED STATES V. HOLT, 16 M.J. 393 (C.M.A.1983).
II
THAT PORTION OF THE COURT-MARTIAL ORDER WHICH CONTAINS THE SUPERVISORY AUTHORITY’S ACTION IS INCORRECT IN THAT IT ERRONEOUSLY LISTS THE TRIAL DATES AS 18 OCTOBER AND 4 NOVEMBER 1983, VICE 28 SEPTEMBER (R. 1) AND 27 OCTOBER 1983 (R. 9).

*438
Specified Issues by the Court:

I
WAS THE SIGNING OF A NAVY RELIEF SOCIETY CASEWORK FORM NRS-201 WITHIN THE LINE OF DUTY OF RM3 RAYFIELD LAUDER-DALE?
II
DID HE HAVE A DUTY TO PREPARE AND SIGN THIS DOCUMENT AS A PART OF HIS MILITARY DUTIES?
I
We agree. United States v. Baker, supra. The findings of guilty as to specification 1 of Charge III is set aside and specification 1 is dismissed.
II
We agree. A supplemental order is directed to reflect the correct dates of the trial of this case. In addition, the adjudged sentence announced in the court-martial order should be corrected to reflect the actual dollar amount of the forfeitures of pay adjudged by the members and reflected in the record of trial.

Specified Issues

We have examined the record of trial and the responses by both appellate defense counsel and appellate government counsel to the above specified issues. We find that appellant’s actions related to the charge of signing and writing a false “official document” were actions pursuant to those responsibilities assigned to appellant while on temporary duty at a satellite Navy Relief Society office at Naval Weapons Station, Charleston, South Carolina. We find that assignment to have been lawful and reflective of the support accorded to Navy Relief Society facilities in furtherance of the local commander’s responsibilities regarding the welfare of assigned personnel and their families. See Bupers Instruction 7040.3B. See also Department of Defense Instruction 1000.15.
It also is evident, from our examination of the trial evidence, that the preparation of the Navy Relief Society Form NRS-201, a standard informational form used in connection with requests for financial assistance, was a required function of appellant’s temporary duty assignment as a society “case worker” at his satellite office.
However, under the facts in this case, the salient issue as recognized by both appellate defense and appellate government counsel, is not whether appellant was in a “line of duty” status at the time of the alleged offense, or whether he had a “duty” to prepare the subject form. The determinative issue here is whether Form NRS-201 was an “official document” as encompassed by Article 107, UCMJ. This issue, regarding the officiality of documents, has been the subject of extensive appellate review. United States v. Ragins, 11 M.J. 42 (C.M.A.1981); United States v. Davenport, 9 M.J. 364 (C.M.A.1980); United States v. Aronson, 8 U.S.C.M.A. 525, 25 C.M.R. 29 (1957). The criminal law concept related to the forgery or false preparation of “official” documents emanates from a concern about the real or potential impact such false documents might have upon important governmental interests and upon the efficient and responsive operation of governmental entities. The effect of false documents related solely to the interests of individual persons and nongovernmental parties, is generally proportional to the individually affected interest. Governmental operations, however, are uniquely susceptible to the damaging impact of falsified documents. Necessary administrative control procedures and the interrelationships of operating line structures with supporting staff activities depend, in large part, upon the validity of documents and related “paperwork.” The appellate case law, as we have evaluated it, understandably has had the greatest difficulty in determining the linkage between documents utilized by non-governmental agencies and the intended purposes of such documents. Ragins, supra, involved the falsification of private baking company documents related to Navy Commissary store deliveries; Daven *439 port, supra; Aronson, supra, both involved questions of whether statements provided to investigative agents were “official” expressions; United States v. Petullo, 709 F.2d 1178 (7th Cir.1983), involved fraudulent documentation submitted by private contractors to Chicago city authorities to support payment from commingled federal, state, and city funds; United States v. Candella, 487 F.2d 1223 (2d Cir.1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974), private moving companies submitted fraudulent documents to New York City officials, who were responsible for the processing and payment of the company invoices, with only subsequent involvement by federal officials in the reimbursement of city expenditures under authorized federal grant programs; United States v. Waters, 457 F.2d 805 (3d Cir. 1972); United States v. Munoz, 392 F.Supp. 183 (1974), aff'd, 529 F.2d 526 (1975), involved false documentation submitted for monetary gain by sub-contractors who had no direct contractual link with federal agencies.
In each of the above instances, however, the private or intra-company, documents involved were found to be encompassed by the federal statute prohibiting the making of false or fraudulent statements “in any matter within the jurisdiction of any department or agency of the United States,” 18 U.S.C. 1001. In the military justice system, the Court of Military Appeals has used this federal statute as a reference point to Article 107, UCMJ. Ragins, supra at 44. The relevant principal cited in Ra-gins is that a statement or document is “official” when its intended or actual use is “within the jurisdiction” of a department or agency of the United States. We find difficulty, however, in applying such a general concept to those cases in which there exists no statutory requirement or authority for the use of the document or statement in question. Aronson, supra at 32. The critical determinative, in our view, is not one of “jurisdiction,” but of nexus or relationship between the private activity using the documents or statements which are unique to that organization (using activity) and departments or agencies of the United States. The degree of nexus or linkage between the using activity and a clearly identifiable instrumentality of the United States need only be determined, obviously, when the character and governmental status of the using activity are not objectively obvious.
The appropriate inquiry, in our view, when resolving the issue of whether a statement or document is official and thereby property chargeable under Article 107, UCMJ, should involve inquiry in the following areas:
What, if any, statutorily-mandated, governmental function is involved in or related to, the use of this document or statement?
Is the subject document or statement required, pursuant to federal statute or directive, and duly published by a United States government department or agency?
What effect, if any, does the intended or actual use of this document or statement have upon a recognizable interest or function of a United States government department or agency?
In the case of internal statements or documents, what is the governmental character, if any, of the using activity, and if no such governmental character is evident or is objectively minimal, what degree of nexus can be discerned between the using activity and essential and integral functions of a United States government department or agency?
These points of inquiry are not necessarily exclusive, but do represent, in our opinion, the appropriate range of inquiry when addressing this issue.
We have thus considered the subject form in this case. We have, in our examination of the record, considered the testimony of the Executive Director, Charleston, South Carolina, Chapter, Navy Relief Society, regarding the use of the form NRS-201. We have also considered the responses of appellate defense and appellate government counsel to this specified issue.
*440 We find that there was no material, statutorily-mandated government function involved in, or related to, the use of Form NRS-201 by Navy Relief field offices. We recognize the obvious beneficial morale interest of the naval service in general, and individual operating commands and bases, in particular, related to Navy Relief services to naval service personnel, their families, and dependents. We do not, however, find that this benefit evolves from any statutory duty. We find that the use of Form NRS-201 by Navy Relief Society officials to control and manage the expenditure of Society monetary loans or grants, rests upon internal management practices of the Society rather than upon any general Congressional mandates applicable to the control and disbursement of appropriated funds.
We find that Form NRS-201 is prepared solely pursuant to internal Navy Relief Society directives and although this undoubtedly facilitates effective management within the Navy Relief Society system, we can discern little material influence upon any significant interest of the United States government in general, or the naval service in particular.
Certainly the availability of assistance funds to naval service personnel serves an important interest and avoids possible reliance by individual service members on other governmental assistance sources. The Navy Relief Society and its counterpart organizations serving the other uniformed services reflect, thereby, a commendable and traditional response to the emergency needs of military personnel. We find no evidence, however, that the fraudulent use of this form impacted in any specified way on the readiness of the Society to continue to make available, in appropriate cases, assistance funds to our sailors and Marines and their families. We further find no evidence, which would even indicate that this particular form is so salient to the funds approval process, that continued availability of Society monetary assistance hinges upon exclusive, non-fraudulent, use of this form.
We specifically find that the Navy Relief Society is not an instrumentality of the United States government. The government’s assertion that the providing of physical office facilities, utilities, and in some instances, personnel support, notwithstanding,[1] we find that there is a clear distinction between a cooperative and supportive policy by Navy department officials for organizations such as the Navy Relief Society and the American Red Cross and the subsuming of such organizations into the operating or supporting establishment of the naval service. See BUPERSINST 7040.3B. We also find that the nexus between the Navy Relief Society’s admittedly valuable service and the integral functions of the Navy department and the naval services is, while supportive in nature, not so substantial as to establish the Society as a government entity.
We note that the following information regarding the Society is contained in the above referenced BUPERS instruction:
The Navy Relief Society, although closely affiliated with the Navy and working exclusively among naval personnel and their families, is a private organization, incorporated in 1904 under the laws of the District of Columbia. It is in effect, the relief agency of the “naval community.” It is supported by them and operates in that “community,” which is roughly defined as the special group of persons serving in the Navy and Marine Corps and those members of their fami *441 lies who are dependent upon them and share their experience. Its existence recognizes that this group has its own problems and conditions of life and provides its own agency for their relief. While many of the Society’s officials and representatives are naval personnel, it uses no Government funds in its operations, and those administering its affairs act in their private rather than their official capacities. The organization makes possible the collection and utilization of funds for the relief of distress among sailors, marines, and their families. It is the Navy’s own organization to take care of its own people when they need help.
Therefore, we specifically find that the subject document, Navy Relief Society Form NRS-201, under the specific circumstances of this case, was not an “official document.”
Accordingly, we find that appellant’s plea of guilty to the specification under Charge I, alleging the false signing of an “official document” was improvident. The findings of guilty as to Charge I are set aside and Charge I is dismissed.
The findings of guilty as to Charge II and of Specification 2 of Charge III are correct in law and fact and they are affirmed. Given our setting aside of the findings and dismissal as to Charge I, we have reassessed the sentence in this case and approved only so much of the sentence as provides for a bad-conduct discharge from the naval service, confinement at hard labor for three months, and reduction to pay grade E-l.
Chief Judge EOFF concurs.

. We find questionable the practice of utilizing active duty personnel as "caseworkers” in Navy Relief Society Offices. No information is contained in this record regarding the authority for appellant’s assignment to such duty other than a reference in a defense witness testimony, to appellant’s assignment by "POMFLANT” to the Navy Relief Society at Charleston on “limited duty status." Under other factual circumstances, a service member’s duty assignment and status might be relevant in determining the official character, if any, of statements or documents used in relation to that member’s duties. In this case, for reasons cited in this opinion, the status of appellant is irrelevant given the factual reality of his status while assigned to the Navy Relief Society.