UNITED STATES, Appellee,

v.

Thomas L. RAGINS, Chief Mess Management Specialist, U. S. Navy, Appellant.

No. 38,277.
NCM 78 1258.

U. S. Court of Military Appeals.

May 4, 1981.

Appellant: *Lieutenant Commander Patrick A. Fayle, JAGC, USN* (argued); *Lieutenant David S. Durbin, JAGC, USN.*

Appellee: *Lieutenant William C. Martucci, JAGC, USNR* (argued); *Commander T. C. Watson, Jr., JAGC* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

Pursuant to his pleas, appellant was convicted by general court-martial of conspiracy to commit larceny, making false official statements, and larceny, in violation of Articles 81, 107, and 121 of the Uniform Code of Military Justice, 10 U.S.C. §§ 881, 907,

and 921, respectively.[1] He was sentenced to a bad-conduct discharge, confinement at hard labor for 5 years, total forfeitures of pay and allowances, and reduction to E-1; but in accordance with a pretrial agreement, the convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement at hard labor and total forfeitures for 2 years, and reduction to E-5. The approved findings of guilty and the sentence were affirmed by the United States Navy Court of Military Review—except for a minor modification of the forfeitures.

We granted review (8 M.J. 266) of these two issues concerning the providence of the pleas of guilty:

I. WHETHER APPELLANT'S PLEA TO THE SPECIFICATION OF CHARGE II, MAKING FALSE OFFICIAL STATEMENTS, WAS IMPROVIDENT?

II. WHETHER APPELLANT'S PLEAS TO THE SPECIFICATIONS OF CHARGES I AND III, CONSPIRACY TO STEAL GOVERNMENT FUNDS AND LARCENY OF GOVERNMENT FUNDS, WERE IMPROVIDENT?

I

Appellant was assigned to the Commissary Store, Norfolk Naval Shipyard, Portsmouth, Virginia. The charges arose out of a scheme whereby he and Mr. John Rose, a deliveryman for Kotarides Baking Company, falsified invoices for bread deliveries to the commissary. Appellant receipted for bread purportedly delivered to the Commissary Store, as shown by the invoices, but the bread was sold by Rose to third parties for cash. The proceeds were then split between appellant and Rose. This arrangement, which continued from March 1977 until September 1977, resulted in receipts from the private bread sales which, according to appellant's estimate, amounted to $25,838.05.

Appellant now asserts the improvidence of his guilty plea to Charge II, which alleged false official statements by "signing his name on Kotarides Baking Company sales invoices, said signing acknowledging receipt on behalf of Commissary Store, Norfolk Naval Shipyard, Portsmouth, Virginia, of deliveries of products of Kotarides Baking Company." His premise is that the invoices involved were not "official statements" but were only receipts given to the baking company.

As to the other two charges the appellant's argument for improvidence is that the larceny plotted and committed by appel-

1. The three specifications read as follows:

    *Charge I*
    Specification: In that Mess Management Specialist Chief Thomas Lee Ragins, U.S. Navy, Norfolk Naval Shipyard, Portsmouth, Virginia, did at Commissary Store, Norfolk Naval Shipyard, Portsmouth, Virginia, on or about 1 March 1977, conspire with John Rose to commit an offense under the Uniform Code of Military Justice, to wit: larceny of the U.S. currency, the property of the U.S. Government, and in order to effect the object of the conspiracy the said Rose did prepare a Kotarides Baking Company sales invoice which indicated certain quantities of the products of Kotarides Baking Company had been delivered to Commissary Store, Norfolk Naval Shipyard, Portsmouth, Virginia, when in fact no such delivery was made, and the said Ragins did acknowledge receipt of the said delivery to the said Commissary Store, then knowing no delivery had been made.

    *Charge II*
    Specifications: In that Mess Management Specialist Chief Thomas Lee Ragins, U.S. Navy, Norfolk Naval Shipyard, Portsmouth,

    Virginia, did at Commissary Store Norfolk Naval Shipyard, Portsmouth, Virginia, from 1 March 1977 until 17 September 1977, with intent to deceive, repeatedly make official statements; to wit: signing his name on Kotarides Baking Company sales invoices, said signing acknowledging receipt on behalf of Commissary Store, Norfolk Naval Shipyard, Portsmouth, Virginia, of deliveries of products of Kotarides Baking Company to the said Commissary Store, which statements were wholly false in that no deliveries were in fact made, and were then known by the said Ragins to be so false.

    *Charge III*
    Specifications: In that Mess Management Specialist Chief Thomas Lee Ragins, U.S. Navy, Norfolk Naval Shipyard, Portsmouth, Virginia, did at Commissary Store, Norfolk Naval Shipyard, Portsmouth, Virginia, from 1 March 1977 until 17 September 1977, steal $25,838.05 in U.S. currency, the property of the U.S. Government.

lant and Rose was a larceny of bread and not of money. Under this view the charges are substantially at variance with the facts elicited during the providence inquiry and otherwise since, instead of the Government's being the victim of a larceny of currency, bread was stolen from the baking company.

## II

■ During the providence inquiry concerning the charge under Article 107, the military judge ascertained from appellant that it was his duty to sign the invoices for bread deliveries. These invoices signified "to the company that the bread had actually been delivered"; also "those invoices controlled the billing that was to be made to the U. S. Government." Sometimes an invoice would be signed indicating that bread had been delivered when no delivery had taken place; and sometimes the signed invoice showed a greater amount of bread than had actually been delivered. In each instance, the appellant knew the statements were false and the documents were made with the intent to deceive. Moreover, as appellant conceded, "[t]hey were to deceive the U. S. Government into thinking it had gotten a certain amount of bread when, in fact, it did not."

■ This Court has noted "a 'general analogy' between the language of Article 107 [of the Uniform Code] and that of [18 U.S.C.] § 1001 . . . which prohibits the knowing and willful making of a false or fraudulent statement 'in any matter within the jurisdiction of any department or agency of the United States.'" *United States v. Aronson*, 8 U.S.C.M.A. 525, 528, 25 C.M.R. 29, 32 (1957). "Official," as used in Article 107, is thus the substantial equivalent of the phrase "in any matter within the jurisdiction of any department or agency of the United States," as found in 18 U.S.C. § 1001. Therefore, the relevancy of federal cases applying 18 U.S.C. § 1001 is obvious. *See United States v. Davenport*, 9 M.J. 364 (C.M.A.1980).

Examination of the federal precedents interpreting 18 U.S.C. § 1001 strongly suggests that the appellant made "official statements" for purposes of Article 107. For example, in *United States v. Candella*,

487 F.2d 1223 (2nd Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974), the defendants were convicted of making false statements in matters within the jurisdiction of the Department of Housing and Urban Development. The defendants were owners of a moving company which had undertaken to move the property of four commercial tenants who had been forced to relocate because of federally funded urban renewal projects. Accordingly, the tenants were entitled to reimbursement from the City of New York for moving expenses. As explained in the Court's opinion, the billing process was as follows:

The tenants, who had the initial obligation of paying the mover for his services, assigned their claims for reimbursement from the City to the mover, as permitted by the United States Department of Housing and Urban Development (HUD) regulation (24 C.F.R. § 41.12). The City then had the responsibility to process and pay the claims made by the movers. The City, in turn, was entitled to reimbursement by HUD. The City agency in charge, the Department of Relocation, based its payments on bills submitted by the moving company which were accompanied by so-called "bills of lading," which detailed the number of man-hours worked on each day by the employees of the mover, plus an affidavit by the mover which attested to the accuracy of the bills of lading. The affidavits relating to the moves involved herein were executed on forms prepared by the City and not by HUD. The convictions appealed from were based on indictments charging that the bills of lading and affidavits submitted by the defendants for the four moves in question were false, in violation of 18 U.S.C. § 1001 and 18 U.S.C. § 2 (aiding and abetting).

*Id.* at 1224 (footnote omitted).

In rejecting a claim that the affidavits filed by the defendants were not "within the jurisdiction of" HUD, the Court of Appeals had noted that "[t]he United States became ultimately responsible for paying 100% of the moving expenses incurred by the four concerns involved." *Id.* at 1226.

Even as to bills that were in an amount less than those which required specific approval from HUD and for which the City of New York was authorized to make payments subject to subsequent audit and inspection of the claims by HUD, the Court concluded that the requirements of 18 U.S.C. § 1001 were fulfilled. It reasoned:

Case law makes it clear, however, that a violation of § 1001 does not require that the false statement must actually have been submitted to a department or agency of the United States, but rather that it was contemplated that the statement was to be utilized in a matter which was within the jurisdiction of such department or agency. *See United States v. Kraude,* 467 F.2d 37, 38 (9th Cir), *cert. denied,* 409 U.S. 1076, 93 S.Ct. 684, 34 L.Ed.2d 664 (1972); *United States v. Greenberg,* 268 F.2d 120, 122 (2d Cir. 1959); *United States v. Ebeling,* 248 F.2d [429,] 434; *United States v. Myers,* 131 F.Supp. 525, 529–530 (N.D.Cal.1955).

*Id.* at 1227.

In *United States v. Stanford,* 589 F.2d 285 (7th Cir. 1978), the defendants had been prosecuted for mail fraud, in violation of 18 U.S.C. § 1341, and for making false statements, in violation of 18 U.S.C. § 1001. The false statements had been made to the Illinois Department of Public Aid with respect to the defendants' income and were designed to establish eligibility for food stamps and other welfare benefits. The statements were made on forms of the State agency, which alone decided the eligibility of each individual for benefits, and there was no evidence that the defendants knew of the federal involvement in these welfare programs.

In upholding the convictions, the Court of Appeals remarked:

It is the general rule, however, that a statement may concern a matter within the federal jurisdiction described in section 1001, even if the statement is not submitted directly to the federal department or agency involved, and the federal agency involvement is limited to reimbursement of expenditures. See, e. g., *United States v. Candella,* 487 F.2d 1223

(2d Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974); *United States v. Matanky,* 482 F.2d 1319 (9th Cir.), *cert. denied,* 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 329 (1973); *United States v. Waters,* 457 F.2d 805 (3d Cir. 1972); *Ebeling v. United States,* 248 F.2d 429 (8th Cir.), *cert. denied,* 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 261 (1957). Furthermore, although this court has never considered this question, we do not read the decisions of other circuits as establishing an absolute requirement that fraudulent statements be accompanied by knowledge of the federal involvement to be a matter within the jurisdiction of a federal agency and thus violative of section 1001. The term "jurisdiction" merely incorporates Congress' intent that the statute apply whenever false statements would result in the perversion of the authorized functions of a federal department or agency. *See United States v. Gilliland,* 312 U.S. 86, 93, 61 S.Ct. 518, 85 L.Ed. 598 (1941). Thus, when a statement is not submitted directly to a federal agency, knowledge of federal involvement may be one circumstance to be considered in assessing the potential threat the statement may be to the proper functioning of the federal agency involved. *Id.* at 297.

*United States v. Matanky,* 482 F.2d 1319 (9th Cir. 1973), *cert. denied,* 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 329 (1973), upheld the conviction under 18 U.S.C. § 1001 of a physician who transmitted false requests for medicare payments to insurers who had entered into written contracts with the Department of Health, Education and Welfare, through the Social Security Administration, to handle medicare forms and to determine payments to physicians. *See United States v. Kraude,* 467 F.2d 37 (9th Cir. 1972), *cert. denied,* 409 U.S. 1076, 93 S.Ct. 684, 34 L.Ed.2d 664 (1972).

In *Ebeling v. United States,* 248 F.2d 429 (8th Cir. 1957), *cert. denied sub nom. Emerling v. United States,* 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 261 (1957), the defendants were officers of two St. Louis corporations and had been convicted on eight counts charging violations of 18 U.S.C. § 1001.

One company was a subcontractor for the other, which had a contract with the Department of the Army. The subcontractor had submitted to the prime contractor eight invoices which falsely stated that certain work had been performed. The prime paid the invoices and included the payments in its charges to the Army. In rejecting the defense "that a writing or document" does not fall "within the jurisdiction of a department or agency of the United States [for purposes of 18 U.S.C. § 1001], unless it has been physically presented to [that] department or agency for consideration," the Court concluded that "jurisdiction" had not been "employed in this technical ... sense." Instead, all the statute required was "any knowing making or use of such a statement or document in intended relationship to a matter that is within the jurisdiction of the department or agency." 248 F.2d at 434.

Appellate defense counsel have attempted to distinguish these cases on the grounds that they involved submission of false statements to an intermediary who was an agent acting for a federal department or agency. However, the language of the cases is not restricted in this manner. Moreover, *Ebeling v. United States, supra,* certainly does not fit the suggested explanation. Accordingly, in light of the close relationship between Article 107 of the Code and 18 U.S.C. § 1001, and the well-established interpretations of the latter provision, we are persuaded that appellant's conduct, as related by him during the providence inquiry, is fully consistent with his pleas of guilty to Charge II.

## III

■ Appellant's misconduct would have supported a prosecution under Article 121 for larceny of the bread from the bakery. Bread—which is an "article of value"—was obtained wrongfully from the possession of the owner with the intent to defraud the owner of its use and benefit. The circumstances that ultimately the baking company probably would be reimbursed for its loss, so that the Navy and the United States

would in the long run be the loser, would not preclude a conviction on this basis.

Whether the payments by the United States to the baking company could be the basis of a larceny prosecution of appellant for those payments is more doubtful. Of course, appellant used a wrongful means whereby money was obtained from the possession of the Government, and this was done with the intent permanently to deprive and defraud the United States of that money. The fact that the money went from the Government into the hands of the baking company, which had no fraudulent intent, to reimburse it for the bread which appellant and Rose had purloined would not seem to preclude treating this conduct as larceny from the Government committed when the contemplated payments to the baking company were made after it ultimately submitted the false invoices. False pretenses used by A to induce B to transfer property to C, who is completely innocent, can probably fit within the literal language of Article 121.

Appellate government counsel have, with considerable ingenuity, suggested still another theory to support criminal liability on Charges I and III as they were drafted. They set forth this theory in these terms:[2]

When the appellant signed the Baking Company's receipts signifying that the bread had been delivered, legal title to the bread vested in the Commissary and thus in the U.S. Government. The appellant's duty was to verify the deliveries. As such, he was acting as the lawful and duly authorized agent of the U.S. Government. Of course, in this case, he acted for an unlawful purpose: namely, to deceive the U.S. Government. Nonetheless, his signature on the Baking Company's receipts passed legal title to U.S. Government, as at the same time it created a legal obligation on the part of the Government to pay the Baking Company. The Government was bound by the actions of its agent.

Although the actual possession of the bread remained with the Baking Compa-

ny's drivers, the U.S. Government had a superior possessory interest in the bread (by virtue of its proprietory [sic] interest).

In short, under the government's theory, appellant received the bread for the government's benefit and held it in trust for the Government. *Cf.* 76 Am.Jur.2d, Trusts §§ 221, 227, 240 (constructive trusts). When the bread was sold, the proceeds in turn were held in trust. *Cf.* 76 Am.Jur.2d, Trusts §§ 248–58; *United States v. Carter,* 217 U.S. 286, 30 S.Ct. 515, 54 L.Ed.2d 769 (1910). Then, in turn, when he and Rose split up these proceeds, there was a "withholding" of money which belonged to the Government, this money being the amount of the proceeds from the private bread sales. Thus, appellant is ultimately responsible for an embezzlement of these proceeds.

We find the government's argument persuasive. In any event, during the providence inquiry a clear case of larceny under Article 121 was revealed by appellant's own statements. Under these circumstances, we conclude that a "factual basis" has been adequately established for the pleas to Charges I and III.

IV

It follows, therefore, that the findings and the sentence, as approved by the United States Navy Court of Military Review, are affirmed.

Judges COOK and FLETCHER concur.