UNITED STATES, Appellee,

v.

Private First Class Jose F. SIERRA, Jr.,
United States Army, Appellant.

ARMY 20020438.

U.S. Army Court of Criminal Appeals.

6 July 2005.

For Appellant: Colonel Robert D. Teetsel, JA; Lieutenant Colonel Mark Tellitocci, JA; Major Allyson G. Lambert, JA; Captain Rob W. MacDonald, JA (on brief).

For Appellee: Colonel Steven T. Salata, JA; Lieutenant Colonel Mark L. Johnson, JA; Major William J. Nelson, JA (on brief).

Before MERCK, JOHNSON, and MOORE, Appellate Military Judges.

## OPINION OF THE COURT

MERCK, Judge:

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of attempted larceny of military property, false official statement, and obtaining services by false pretenses, in violation of Articles 80, 107, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 907, and 934 [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for three months, forfeiture of $737.00 pay per month for three months, and reduction to Private E1.

This case is before the court for automatic review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. We have considered the record of trial, appellant's assignments of error, the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and the government's response thereto. In his first three assignments of error, appellant asserts:

## ASSIGNMENT OF ERROR I

APPELLANT'S PLEA OF GUILTY TO CHARGE II AND ITS SPECIFICATION[1] WAS IMPROVIDENT, WHERE THE PROVIDENCE INQUIRY FAILED TO ESTABLISH A SUFFICIENT FACTUAL PREDICATE UNDER ARTICLE 121,[2] U.C.M.J., THAT APPELLANT ATTEMPTED TO STEAL FUNDS.

## ASSIGNMENT OF ERROR II

CHARGE III AND ITS SPECIFICATION FAILS TO STATE AN OFFENSE UNDER ARTICLE 134, U.C.M.J., IN THAT "THE OPPORTUNITY TO BID ON AIRLINE TICKETS" IS NOT A SERVICE.

## ASSIGNMENT OF ERROR III

APPELLANT'S PLEA OF GUILTY TO CHARGE III AND ITS SPECIFICATION[3] WAS IMPROVIDENT, WHERE THE PROVIDENCE INQUIRY FAILED TO ESTABLISH A SUFFICIENT FACTUAL PREDICATE UNDER ARTICLE 134, U.C.M.J., THAT "THE OPPORTUNITY TO BID ON AIRLINE SERVICES" HAD ANY VALUE.

We disagree with assignment of error I, but agree with assignments of error II and III. We will grant appropriate relief in our decretal paragraph.

## FACTS

During the providence inquiry, appellant testified under oath and by way of a stipulation of fact about the facts and circumstances of the offenses. Appellant explained that he was at work when he saw a co-worker, Private First Class (PFC) Sibley, using the computer they shared to go on an electronic website, Priceline.com.[4] He said that PFC Sibley was trying to get tickets for herself and her family so they could travel home while on leave. According to the stipulation of fact, when the website prompted PFC Sibley to enter her credit information so she could enter a bid, PFC Sibley went home to retrieve her credit card.

Appellant stated that he did not think that PFC Sibley could afford the tickets, so while she was gone he decided to "help her out." Appellant said that he tried to use his own credit card information first, but it was not accepted. On a nearby desk, appellant saw a billing statement from a government-issued international merchant purchase agreement card (IMPAC) [hereinafter government credit card] assigned to the noncommissioned officer in charge of the office, Sergeant First Class (SFC) Kolar. Appellant entered the number from that credit card, the billing address, and SFC Kolar's name into the computer and the card was accepted. Appellant put his name on the shipping address.

Appellant admitted that his action of entering this information onto the website obligated the government to pay the price of the airline tickets, $995.35. He also admitted

1. The Specification of Charge II reads as follows: In that Private First Class Jose F. Sierra Jr., U.S. Army, Headquarters and Headquarters Troop, 1st Squadron, 11th Armored Cavalry Regiment, Fort Irwin, California, did, at Fort Irwin, California, on or about 26 October 2001, attempt to steal government funds in the amount of about $995.35, from a government IMPAC credit card, card number 4716–3000–0347–5200, military property, the property of the United States Government.

2. Appellant was charged with attempted larceny under Article 80, UCMJ.

3. The Specification of Charge III reads as follows:
   In that Private First Class Jose F. Sierra Jr., U.S. Army, Headquarters and Headquarters Troop, 1st Squadron, 11th Armored Cavalry

Regiment, Fort Irwin, California, did, at Fort Irwin, California, on or about 26 October 2001, with intent to defraud, falsely pretend to PriceLine.Com that the said Private First Class Jose F. Sierra Jr., was Sergeant First Class William J. Kolar, then knowing that the pretenses were false, and by means thereof did wrongfully obtain from PriceLine.Com services, of a value of about $100.00 or less, to wit: the opportunity to bid on airline tickets.

4. Appellant said that Priceline.com was a computer website where the buyer bids on airline tickets using a credit card. According to the stipulation of fact, "[n]ormally, one identifies an itinerary within approximate times and fixed locations along with a specific monetary bid. Airline tickets most closely matching the itinerary are awarded to the highest bidder."

that he intended to permanently deprive the government of $995.35 by allowing the government to pay for the tickets. He said that he had no intent to repay the government any of the money.

Appellant told the military judge that he did not think the government actually paid for the tickets. He explained that SFC Kolar looked over the billing statement for the card when he received it, noticed the charge to Priceline.com, and reported it to the S–4, Captain (CPT) Hafen. After SFC Kolar and CPT Hafen investigated, they discovered what had happened and cancelled the purchase.

With regard to the Specification of Charge III, alleging that appellant obtained services by false pretenses, appellant explained that he wrongfully obtained the service of "being able to bid for airline tickets with Sergeant Kolar's credit card." He said that he accomplished this by pretending to be SFC Kolar, entering SFC Kolar's government credit card number, billing address, and SFC Kolar's name. He admitted that he obtained those services with the intent to defraud and that the value of the services was $100.00 or less.

The portion of the stipulation of fact describing the offense reflects the following:

> The accused wrongfully obtained the services of Priceline.com by falsely pretending that he was authorized to use the IMPAC credit card number for the purchase of the airline tickets when he entered the number into the Priceline.com payment entry screen. The accused knew of the falsity of this pretension at the time that he entered the IMPAC credit card number into the Priceline.com payment entry screen. At the time the accused intended to defraud Priceline.com. The actions of the accused, illegal payment of airline tickets with a Unit IMPAC, were to the prejudice of good order and discipline in HHT, 1/11th ACR, Fort Irwin, California.

## LAW

■ We review a military judge's acceptance of a guilty plea for an abuse of discretion. *United States v. Eberle,* 44 M.J. 374, 375 (C.A.A.F.1996). In order to overturn a guilty plea, the record of trial must show a substantial basis in law and fact for questioning the plea. *United States v. Prater,* 32 M.J. 433, 436 (C.M.A.1991). A providence inquiry into a guilty plea must establish that the accused himself believes and admits that he is guilty of the offense, and the factual circumstances admitted by the accused must objectively support the guilty plea. *United States v. Garcia,* 44 M.J. 496, 497–98 (C.A.A.F.1996) (citing *United States v. Higgins,* 40 M.J. 67, 68 (C.M.A.1994)); *United States v. Davenport,* 9 M.J. 364, 367 (C.M.A. 1980); *see also* UCMJ art. 45(a), 10 U.S.C. § 845(a).

The elements of an attempted larceny of military property are:

(1) That the accused did a certain overt act;

(2) That the act was done with the specific intent to commit the offense of larceny of military property;

(3) That the act amounted to more than mere preparation; and

(4) That the act apparently tended to effect the commission of the intended offense, i.e. larceny of military property.

*See Manual for Courts–Martial,* United States (2002 ed.) [hereinafter *MCM*], Part IV, para. 4b.

The elements of the offense of larceny of military property are:

(1) That the accused wrongfully took, obtained, or withheld certain property from the possession of the owner or of any other person;

(2) That the property belonged to a certain person;[5]

(3) That the property was of a certain value, or of some value;

(4) That the taking, obtaining, or withholding by the accused was with the intent permanently to deprive or defraud another person of the use and benefit of the property or permanently to appropriate the

---

5. The term "person" in this context "includes (in addition to a natural person) a government, a corporation, an association, an organization, and an estate." *MCM*, Part IV, para. 46c(1)(c)(iv).

property for the use of the accused or for any person other than the owner; and

(5) That the property was military property.

*MCM*, Part IV, para. 46b(1). An obtaining of property is wrongful when it is accomplished by false pretense, which is "[a] false representation of past or existing fact." *Id.* at para. 46c(1)(a) and (e). In order to be prosecuted under Article 121, UCMJ, 10 U.S.C. § 921, the false pretense must be used to obtain tangible property such as money, merchandise, or other goods. *Id.* at para. 46c(1)(h)(iv).

If the false pretense is used to obtain services rather than tangible property, the offense is not a larceny, but a theft of services in violation of Article 134, UCMJ. *United States v. Abeyta*, 12 M.J. 507, 508 (A.C.M.R.1981); *MCM*, Part IV, para. 78. The elements of this offense are:

(1) That the accused wrongfully obtained certain services;

(2) That the obtaining was done by using false pretenses;

(3) That the accused then knew of the falsity of the pretenses;

(4) That the obtaining was with intent to defraud;

(5) That the services were of a certain value; and

(6) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed services.

*MCM*, Part IV, para. 78b. The *Manual* explains that "[t]his offense is similar to the offenses of larceny and wrongful appropriation by false pretenses, except that the object of the obtaining is services ... rather than money, personal property, or articles of value of any kind as under Article 121." *Id.* at para. 78c.

**6.** As the *Manual* states, "[w]rongfully engaging in a credit, debit, or electronic transaction to obtain goods or money ... is usually a larceny of those goods from the merchant offering them." *MCM*, Part IV, para. 46c(1)(h)(vi). Thus, in the case of larceny of property, the subject of the offense is usually the item an accused is ultimate-

## DISCUSSION

### *Attempted Larceny of Military Property*

#### (Charge II and its Specification)

■ Appellant contends that the facts he described in the providence inquiry do not support his plea of guilty to attempted larceny. Instead, he argues that his actions were "closer" to an attempt to obtain services by false pretenses in violation of Article 134, UCMJ. As such, appellant asserts that his conviction must be set aside. Appellant further asserts that we cannot affirm the conviction as an attempted violation of Article 134, UCMJ. *See United States v. Epps*, 25 M.J. 319 (C.M.A.1987). While appellant is correct that the facts would support a finding of guilty to attempted theft of services, that is not the only valid theory of prosecution in this case.

The facts admitted by appellant clearly establish that he went beyond mere preparation in his plan to obtain airline tickets at government expense. The only question with regard to Charge II and its Specification is whether the intended act would have amounted to a larceny of military property. Under the facts of this case, we find that it did and that the plea was therefore provident.

When larceny or theft of services is accomplished through the improper use of a government credit card, the facts may give rise to several charging options. First, the accused can be charged with larceny of the goods from the merchant or theft of the services obtained from the service provider.[6] *See United States v. Ragins*, 11 M.J. 42, 46 (C.M.A.1981). In such situations, the transfer of property or provision of services is induced by the false pretense that the accused is authorized to use the card. When done with the requisite intent, this qualifies as a violation of Article 121 or 134, UCMJ, depending on what is obtained.

ly trying to obtain. The same logic applies when an accused seeks to fraudulently obtain services. It is important to note, however, that while the *Manual* provides guidance as to how these offenses are usually charged, it does not establish a mandatory rule.

If an authorized holder of a government credit card uses it to make unauthorized purchases, he may be charged with larceny of government[7] property. *United States v. Christy*, 18 M.J. 688, 690 (N.M.C.M.R.1984); *see also Ragins*, 11 M.J. at 47. The logic behind this theory is that the accused, acting as an agent for the government, receives the property for the benefit of the government. *Christy*, 18 M.J. at 690. Since "[t]he possessory interest in the United States thus created [is] superior to that of [the accused]," the accused holds the property in trust for the government. *Id.; see also Ragins*, 11 M.J. at 47; *United States v. Albright*, 58 M.J. 570, 573 (Army Ct.Crim.App.2003);[8] *United States v. Leslie*, 13 M.J. 170, 172 (C.M.A. 1982). When the property is subsequently withheld from the government, with the requisite intent to permanently deprive the government of its use and benefit, a larceny is complete. *Id.*

Finally, under certain circumstances, an accused may alternatively be charged with theft of the money the government pays for the goods or services obtained.[9] As our superior court has stated, "[f]alse pretenses used by A to induce B to transfer property to C, who is completely innocent, can probably fit within the literal language of Article 121." *Ragins*, 11 M.J. at 46. Such a situation occurs if the accused fraudulently uses a government credit card to induce the government to pay for property or services he obtains. If the accused intends to deprive the government of that money, he can properly be convicted of larceny of the funds the government actually pays. *See Christy*, 18 M.J. at 691.

In this case, appellant admitted that he wrongfully used a government credit card, with the intent of causing the government to pay for airline tickets it otherwise would not have funded. In doing so, he used a false pretense in an attempt to induce the government to transfer money to Priceline.com. If the government had indeed transferred these funds, he would have been guilty of larceny. However, because his scheme was discovered before it came to fruition, but after he had taken a substantial step toward its completion,[10] appellant's plea of guilty to attempted larceny of those funds was provident.

*Obtaining Services by False Pretenses*

(Charge III and its Specification)

■ The offense of obtaining services under false pretenses requires that "the services were of a certain value." *MCM*, Part IV, para. 78b(5). The factual predicate for this element was not sufficiently established by the providence inquiry in this case. As appellate defense counsel correctly argue:

> Even if the process, rather than the opportunity, of bidding on Priceline.com was itself considered a service, the [record of

---

7. If the property qualifies as military property, an accused may be punished for larceny of military property. *See MCM*, Part IV, para. 46e(1)(a) and (c).

8. In *Albright*, the accused used her government credit card to make unauthorized purchases of goods. *Albright*, 58 M.J. at 571–72. She then sold most of the goods and kept the proceeds. *Id.* at 573. Under the same constructive trust theory, we upheld her conviction for larceny of public funds. *Id.*

9. The government's charging decision in cases involving third party transactions must be based on the specific facts of each individual case. In deciding how to charge an offense, it can be useful to examine the ultimate intent of the scheme, as well as who was induced by the false pretense to transfer property or provide services. For example, in *United States v. Plante*, 36 M.J. 626 (A.C.M.R.1992), the accused intentionally "torched" his car and the insurer paid for him to receive a rental car. On appeal, the accused argued that his plea of guilty to larceny of the money paid by the insurer was improvident since the proper charge was larceny of services for the "use" of the rental car. We disagreed and held that the proper charge was larceny of the money paid by the insurer in violation of Article 121, UCMJ. The ultimate intent of the accused's scheme was to fraudulently obtain insurance proceeds. Additionally, there was nothing false about his transaction with the rental car agency since the accused had authority from his insurer to obtain a rental car. Instead, appellant used a false pretense to obtain that authority from the insurer. By filing a fraudulent insurance claim, appellant wrongfully induced the insurer to pay money to the rental car agency that would otherwise not have been paid.

10. According to the stipulation of fact, the plan had progressed to the point that the tickets were actually mailed to, and received by, PFC Sibley. This certainly crossed the line from mere preparation to a completed attempt.

trial] contains no evidence that the use of Priceline.com was anything other than free. Unlike cases where there is a determinable ATM "service fee," a telephone bill, a taxi cab fare, or a rental amount, appellant's providence inquiry contained no evidence of what it cost appellant to bid for airline services. The [record of trial] displays no indication that Priceline.com ever charged a service fee in connection with its operation. Appellant cannot be found guilty of *wrongfully* obtaining *free* services by false pretenses.

While appellant agreed that the value of "the opportunity" was less than $100.00, there was no evidence that it was anything other than free. The stipulation of fact carefully discusses all other elements of the offense, but conspicuously omits any discussion of value of the "service." Therefore, since appellant did not admit sufficient facts to establish the value of the "service," his plea was improvident.[11]

Accordingly, the findings of guilty to Charge III and its Specification are set aside. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted, the entire record, and applying the principles of *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), the court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for two months, forfeiture of $737.00 pay per month for two months, and reduction to Private E1. All rights, privileges, and property of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision are ordered restored as mandated by Article 75(a), UCMJ, 10 U.S.C. § 875(a).

Judge JOHNSON and Judge MOORE * concur.

---

11. If, as we suspect, access to the Priceline.com website was free, the problem with this conviction goes beyond an improvident plea. Since appellate defense counsel are correct that it is legally impossible to steal free services, the specification would fail to state an offense.

* Judge Moore took final action in this case prior to her retirement.