*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Clovis H. CASTRO, Sergeant
United States Army, Appellant

**No. 21-0017**

Crim. App. No. 20190408

Argued March 10, 2021—Decided May 19, 2021

Military Judge: Daniel G. Brookhart

For Appellant: *Captain David D. Hamstra* (argued); *Colonel Michael C. Friess, Lieutenant Colonel Angela D. Swilley, Major Christian E. DeLuke,* and *Captain Paul T. Shirk* (on brief).

For Appellee: *Captain Anthony A. Contrada* (argued); C*olonel Steven P. Haight, Lieutenant Colonel Wayne H. Williams,* and *Major Brett A. Cramer* (on brief).

Judge MAGGS delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges OHLSON, SPARKS, and HARDY, joined. Judge HARDY filed a separate concurring opinion.

————————

Judge MAGGS delivered the opinion of the Court.

At a special court-martial, Appellant pleaded guilty to one specification of disobeying a lawful general regulation and one specification of larceny in violation of Articles 92 and 121 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 921 (2018). The specification of larceny alleged that Appellant stole gasoline from the General Services Administration (GSA). On appeal to the United States Army Court of Criminal Appeals (ACCA), Appellant argued that his plea to this specification was improvident because the GSA did not own the gasoline that he was charged with stealing. *United States v. Castro*, No. ARMY 2019408, 2020 LEXIS 282, at *1–2, 2020 WL 5039253, at *1 (A. Ct. Crim. App. Aug. 25, 2020) (unpublished). The ACCA rejected this argument,

relying on our decisions in *United States v. Williams*, 75 M.J. 129 (C.A.A.F. 2016), and *United States v. Cimball Sharpton*, 73 M.J. 299 (C.A.A.F. 2014). 2020 CCA LEXIS 282, at *4–8, 2020 WL 5039253, at *2–3. Having reviewed the issue,[1] we agree with the ACCA and affirm its judgment.

## I. Background

Pursuant to a pretrial agreement, Appellant pleaded guilty to a specification alleging a violation of Article 121, UCMJ:

> In that Sergeant Clovis H. Castro, U.S. Army, did, at or near Fort Lee, Virginia, at or near Petersburg, Virginia [and other listed locations] on one or more occasions, between on or about 29 January 2018, and on or about 18 August 2018, steal gas of a value less than $500, the property of the General Services Administration.

According to the parties' detailed stipulation of fact, the GSA is a federal agency that leases vehicles to Army units. For each vehicle leased, the GSA issues a "fuel card" that can be used to pay for fuel for the vehicle and to perform minor maintenance, such as oil changes, on the vehicle. Appellant obtained access to GSA fuel cards and, without authority, used them to fill his personal vehicle with gasoline at various gas stations. The parties further stipulated that "purchase of fuel with a GSA fuel card required GSA to pay the cost of the fuel to the vendor." Accordingly, the GSA paid the gas stations directly for the fuel that Appellant purchased.

The parties also stipulated:

> *The Accused admits that the fuel was the property of the General Services Administration.* The Accused admits that the value of the fuel he stole from GSA did not exceed $500 for any single transaction and that the fuel was of some value. *The Accused admits that at all times he had the intent to permanently deprive the General Services Administration of the fuel.* The Accused admits that at no time did he have authorization to spend GSA funds to purchase fuel for

---

[1] The assigned issue is: "Whether the military judge abused his discretion in accepting Appellant's guilty plea to Specification 1 of Charge II ('steal gas, of a value less than $500, the property of the General Services Administration')."

> his personal vehicle. The Accused had no lawful pur-
> pose or excuse for stealing the fuel, and could have
> avoided doing so if he wanted.

(Emphasis added.)

Before accepting Appellant's guilty plea, the military judge asked Appellant to describe how GSA fuel cards are used. Appellant explained:

> [Y]ou would swipe it in the slot of the fuel pump, sort of like you would do a regular credit card or debit card. Once you do that, it will prompt you [with] several questions. The first question it will prompt you [with] is to give them the number in the front of the card that's associated to the vehicle, the second question, would prompt you to put a mileage, and the final question, would be to select the fuel type.

The military judge informed Appellant that the "owner" of the gasoline referred to "any person, or entity who at the time of the obtaining or taking has a greater right to possession than you did in light of all the conflicting interests" and that "[p]roperty belongs to a person or entity having greater right to possession than you."[2] The military judge then specifically questioned Appellant about the ownership of the gasoline. The inquiry went as follows:

> MJ: So you understood that [the GSA] would be responsible for paying for the fuel as the credit card holder?
>
> ACC: Yes, Your Honor.
>
> MJ: So, would you agree then that whatever you purchased with that card, that GSA card, that GSA would personally own that?
>
> ACC: Yes, Your Honor.
>
> MJ: So you agree and admit that as soon as the transaction was complete you ran the card through and you put those numbers in that fuel belonged to the GSA?
>
> ACC: Yes, Your Honor.

---

[2] Appellant did not challenge this definition of ownership at trial and does not question it on appeal. *See United States v. Turner*, 27 M.J. 217, 221 (C.M.A. 1988) (defining ownership for the purpose of a larceny offense as a "superior right to possession").

. . . .

> MJ: So, do you agree and admit that by inputting that code associate[ed] with the card, and the mileage and putting that gasoline in your vehicle; you thereby stole the gasoline belonging to the GSA?
>
> ACC: Yes, Your Honor.

In addition, Appellant confirmed that he "intended to keep and use the gasoline" that he had stolen.

The military judge accepted the guilty plea. On appeal, the ACCA affirmed. *Castro*, 2020 LEXIS 282, at *8, 2020 WL 5039253, at *3.

## II. Standard of Review

During a guilty plea inquiry, the military judge must determine "whether there is an adequate basis in law and fact to support the plea before accepting it." *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008) (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). This Court reviews "[a] military judge's decision to accept a guilty plea for an abuse of discretion." *Id.* (internal quotation marks omitted) (citation omitted). In so doing, this Court applies "the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Id.* In reviewing the parties' arguments, we must accept all of the facts in the parties' stipulation as true. *See United States v. Nance*, 67 M.J. 362, 363 (C.A.A.F. 2009). "Unless properly withdrawn or ordered stricken from the record, a stipulation of fact that has been accepted is binding on the court-martial and may not be contradicted by the parties thereto." Rule for Courts-Martial (R.C.M.) 811(e).

## III. Discussion

Article 121(a)(1), UCMJ, defines the offense of larceny as follows:

> (a) Any person subject to this chapter who wrongfully takes, obtains, or withholds, by any means, from the possession of the owner or of any other person any money, personal property, or article of value of any kind—

> (1) with intent permanently to deprive or de-
> fraud another person of the use and benefit of
> property or to appropriate it to his own use or the
> use of any person other than the owner, steals
> that property and is guilty of larceny . . . .

As quoted above, the specification in this case alleged that Appellant violated Article 121, UCMJ, in that he "did . . . steal gas of a value less than $500, the property of the General Services Administration." Based on *Cimball Sharpton*, *Williams*, and the stipulated facts, we agree with the ACCA that Appellant has not shown a substantial basis in law and fact for questioning the military judge's acceptance of his guilty plea.

A. *Cimball Sharpton*, *Williams,* and the Stipulated Facts

In *Cimball Sharpton*, a private bank issued a "General Purchase Card" to the appellant pursuant to a contract with the Air Force. 73 M.J. at 299. The appellant had the authority to use the card only to buy medical supplies for the Air Force. *Id.* The appellant, however, used the card without authorization to purchase items for her own personal use. *Id.* at 300. The bank paid the merchants for these purchases and then charged the Air Force. *Id.* The Air Force paid the bank, despite the fraudulent nature of the charges, because the Air Force had agreed not to dispute charges stemming from the cardholder's misuse of the card. *Id.* at 301 & n.2. The appellant was charged with, and found guilty of, "steal[ing] money, military property, of a value greater than $500.00, the property of the United States Air Force" in violation of Article 121, UCMJ. *Id.* at 300. On appeal, the appellant contended that the specification was improper because it charged the Air Force as the victim of the fraud. *Id.* at 301. This Court disagreed, explaining: "The Air Force suffered the financial loss in this case. Therefore, the Government was correct in charging larceny from the Air Force. Since the Air Force was a proper victim, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 302.

In *Williams*, this Court subsequently clarified two points about its reasoning in *Cimball Sharpton*. First, the Court explained that the Air Force was not the victim of the larceny in the case merely because the Air Force had "suffered the

financial loss." 75 M.J. at 134 (internal quotation marks omitted) (citation omitted). "More accurately," this Court explained, the *Cimball Sharpton* opinion "should have stated that the Air Force was an appropriate person to allege in the larceny specification because [the Air Force] was an entity from whom the appellant wrongfully obtained goods or money." *Id.* Second, the Court observed that the *Cimball Sharpton* opinion primarily had considered whether the Air Force was the victim of the larceny and therefore did not focus on "what was stolen." *Id.* at 134 n.6. Addressing the issue of what was stolen, the Court in *Williams* explained:

> While there is precedent supporting the theory, under a legal sufficiency analysis, that what the appellant stole from the Air Force was money, *see United States v. Ragins*, 11 M.J. 42, 46 (C.M.A.1981), it seems the better charging theory would have been that she stole the particular items by exceeding her actual authority and *keeping the items that were in effect purchased by the Air Force for herself.*

*Id.* (emphasis added).

In this case, as described above, Appellant stipulated that the GSA paid for and owned the fuel that he put into his car and he confirmed this fact during the providence inquiry. We accept Appellant's stipulation as true pursuant to R.C.M. 811(e). In so doing, we recognize that "ownership" of property is not purely a question of fact because ownership ultimately depends upon legal principles. We nonetheless believe that the military judge properly accepted the stipulation of the GSA's ownership of the fuel based on numerous precedents of this Court that have relied on stipulations of ownership in larceny cases. *See, e.g., United States v. Simpson*, 77 M.J. 279, 282 (C.A.A.F. 2018) (relying on a stipulation that money stolen through fraudulent credit card use belonged to a bank); *United States v. Aleman*, 62 M.J. 281, 282 (C.A.A.F. 2006) (relying on a stipulation that property stolen was military property); *United States v. Jones*, 35 M.J. 143, 144 (C.M.A. 1992) (relying on a stipulation that an automobile wrongfully appropriated belonged to another soldier). These decisions, in our view, reflect the practical reality that most facts regarding common transactions in property (e.g., whether someone bought goods, possessed goods, owned goods, or sold goods) have some legal component to them and yet are customarily

treated as facts susceptible to stipulation. *See United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996) (holding that whether one person or another person owns property is a matter of proof which the accused may contest at trial and waives when pleading guilty).

Taken together *Cimball Sharpton*, *Williams*, and the stipulation established that it was proper for the specification to identify the GSA as the victim of the larceny because its fuel was stolen. In the words of *Williams*, the GSA "was an entity from whom the appellant wrongfully obtained goods," which in this case was the fuel that he purchased and withheld. 75 M.J. at 134. The stipulation of the facts established the elements of this specification because Appellant admitted that the fuel belonged to the GSA and he intentionally kept it for himself.[3] We thus see no substantial basis in law or fact for

---

[3] This case is distinguishable from *Simpson*, 77 M.J. at 279, our most recent case addressing the proper victim of an electronic transactions larceny. In *Simpson*, the appellee participated in a complex scheme involving numerous financial transfers paid by J.P. Morgan Chase to various creditors of the appellee as reflected on a "zero-balance" account of the Credit First National Association (CFNA). *Id.* at 281. Charged with larceny from CFNA, the appellee pleaded guilty. *Id.* However, this Court found that his plea was improvident because he did not steal anything from CFNA. *Id.* at 283–84. This Court held that:

> The stipulation of fact in this case does not reflect the requirements of our case law. The Government, in this case, entered into a stipulation of fact that set up a matter inconsistent with the larceny specification alleging that the money stolen by Appellee belonged to CFNA. The stipulation clearly demonstrates that Appellee obtained the money from J.P. Morgan.

*Id.* The appellee had wrongfully obtained funds from the bank, not CFNA because the parties stipulated that "[a]t the end of each business day CFNA would 'zero[] out' the account by transferring funds to J.P. Morgan to cover the expenditures made to the appellee's creditors by J.P. Morgan—returning the account to a balance of zero." *Id.* at 282 (second alteration in original). The government even conceded at argument that the appellee obtained *nothing* from CFNA. *Id.* Here, unlike in *Simpson*, the stipulation did not raise a matter inconsistent with the guilty plea.

questioning Appellant's guilty plea and the military judge did not abuse his discretion by accepting Appellant's guilty plea.

## B. Appellant's Counterarguments

Appellant makes three arguments to the contrary, all of which lack merit. Appellant's first argument is that his conduct is not punishable under Article 121, UCMJ, under any of three traditional charging theories—larceny, obtaining by false pretenses, and embezzlement—described in paragraph 46.c.(1)(a) of the *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*). Appellant asserts that he cannot be guilty of either larceny or obtaining by false pretenses because Article 121, UCMJ, requires a wrongful taking, obtaining, or withholding to be " 'from the possession of the owner or of any other person.' " He asserts these theories are unavailable because "the GSA never possessed the fuel appellant allegedly stole." He further argues that he could not have embezzled the property because embezzlement can only occur when a person takes possession of property in a *lawful* way. Appellant argues that his "unlawful means of taking possession precludes an embezzlement theory in this case."

We disagree. Although the third-party vendors (rather than the GSA) physically possessed the fuel immediately prior to Appellant's use of the fuel card, this fact does not render his guilty plea improvident. Possession by the GSA was not required for Appellant's conduct to constitute larceny under Article 121, UCMJ, or the *MCM*. Instead, under the text of the article, withholding the fuel from a party with a superior possessory interest was sufficient. In this case, although Appellant did not take or obtain the fuel from the GSA's possession, he did withhold the fuel from its possession, and withholding property is one of the ways of committing larceny under Article 121, UCMJ. The *MCM* describes withholding as follows:

> A "withholding" may arise as a result of a failure to return, account for, or *deliver property to its owner* when a return, accounting, or delivery is due, even if the owner has made no demand for the property, *or it may arise as a result of devoting property to a use not authorized by its owner. Generally, this is so whether the person withholding the property acquired it lawfully or unlawfully.*

*MCM* pt. IV, para. 46.c.(1)(b) (emphasis added).

In *Williams*, we relied on a withholding theory when we explained that the appellant in *Cimball Sharpton* had "stole[n] the particular items by *exceeding her actual authority and keeping the items* that were in effect purchased by the Air Force for herself." 75 M.J. at 134 n.6 (emphasis added). Similarly, in this case, Appellant stipulated or admitted that the GSA owned the fuel, and that "at all times he had the intent to permanently deprive the General Services Administration of the fuel." Thus, in both this case and *Cimball Sharpton*, the government paid for property that the accused withheld and diverted to personal use without authorization. We find this case and *Cimball Sharpton* indistinguishable in this respect. Accordingly, Appellant's argument does not provide a substantial basis in law or fact for questioning his guilty plea.

Appellant's second argument is that any larceny offense would "require an agency relationship between appellant and the GSA and there is none." Appellant's theory is that the GSA could not own the fuel unless he, acting as the GSA's agent, bought the fuel for the GSA. Appellant asserts that he did not act as the GSA's agent because he had no authority to use the card to purchase the fuel. Although Appellant stipulated that the GSA owned the fuel, he now contends that this stipulation was legally impossible. In Appellant's view, when he made an unauthorized purchase of the fuel, title to the fuel transferred from the vendors directly to him and not to the GSA.

We are also not convinced by this second argument. Even if it is true that parties cannot stipulate facts that are legally impossible,[4] we disagree with Appellant's assumption that

---

[4] Our precedents have held that parties may stipulate facts that are legally possible. *See, e.g., Faircloth*, 45 M.J. at 174. Appellant has not cited, and we have not found, specific authority in our precedents for the distinct proposition that parties may not stipulate legally impossible facts. Some sources that are not directly on point do lend support for it. *See, e.g.,* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (3d ed. 2004 & Supp. 2021) (explaining that when a district court accepts the facts in a pleading as true for the purpose of a motion for judgment on

the only legally possible way for the GSA to have had a greater right than Appellant to possess the fuel would be for the Appellant to buy the fuel for the GSA as the GSA's agent. For example, in *Cimball Sharpton*, we held that the Air Force could properly be named as the object of larceny because it had an obligation to make payments on all charges associated with a general purchase card, including unauthorized purchases. 73 M.J. at 300. As we explained in *Williams*, "the agreement between the Air Force and U.S. Bank meant that U.S. Bank (and hence the merchants) would honor any charges made either with apparent or actual authority, and that any wrongful use of the [gas card] by the appellant would wrongfully induce payment by the Air Force." 75 M.J. at 134. An agency relationship is therefore not always necessary for the payer to have a greater right to possess the purchased property.[5]

Because Appellant has not shown that the facts he stipulated are legally impossible, his second argument fails. In *Faircloth*, the appellant pleaded guilty to larceny in a case involving a check made payable to him and a copayee, Ford Motor Credit Corporation (FMCC). 45 M.J. at 173. The appellant admitted that he forged the indorsement of a representative of FMCC to obtain payment of the check, even though "FMCC was supposed to receive all the money and that he was not entitled to any of it." *Id.* On appeal, the accused questioned the legal basis for his admission. *Id.* This Court, however, rejected the challenge, reasoning:

> *As a matter of law, it was possible for FMCC to have a superior possessory interest in the proceeds.* As a

---

the pleadings, the court does not accept "legally impossible facts" as true); *see also Simpson*, 77 M.J. at 283–84 (explaining that the fact that the appellee obtained *nothing* from an entity meant as a matter of law that entity could not be the victim of the larceny and the appellee's guilty plea to larceny from that entity was improvident).

[5] We address here only the argument that Appellant has made, namely, that his stipulation of fact was legally impossible because an agency relationship was required. It suffices to conclude that this general assertion is incorrect. If Appellant has not shown that the facts are legally impossible, then under R.C.M. 811(e) we must accept the facts as true without obliging the parties to demonstrate why they are true.

> matter of fact, Faircloth admitted that FMCC had a superior possessory interest, and he explained in considerable detail, couched in a layman's terms, the factual predicate for FMCC's superior possessory interest. Faircloth said nothing inconsistent with a guilty plea. Accordingly, there was no legal or factual basis to overturn his plea.

*Id.* at 174 (emphasis added). The same reasoning is true in the present case. Appellant stipulated facts that are legally possible and that are consistent with his guilty plea.

In addition, Appellant's second argument contradicts what this Court said in *Williams* about the Air Force's ownership of the goods at issue in *Cimball Sharpton*. Even though the appellant in *Cimball Sharpton* did not have the authority to make the purchases for the Air Force, the Air Force nonetheless owned the goods.[6] *Williams*, 75 M.J. at 134 n.6. Accordingly, Appellant's second argument does not provide a substantial basis in law or fact for questioning his guilty plea.

Appellant's third argument is that even if both of the first two arguments fail, the military judge still abused his discretion because "he never explored the nature and extent of [an] agency relationship in the providence inquiry." We also disagree with this contention. As we have just explained, Appellant's liability did not depend on the existence of an agency relationship. The military judge therefore did not have to explore the nature of a potential agency relationship in the providence inquiry. In addition, our review of the record confirms that the military judge properly explained the elements of larceny to Appellant and questioned him about these elements. Appellant stipulated and admitted that the GSA owned the fuel and that he intended to keep the fuel for himself. There is no requirement "that any witness be called or any independent evidence be produced to establish the factual predicate for the plea." *United States v. Davenport,* 9 M.J. 364, 367 (C.M.A. 1980). The factual predicate is sufficiently established if "the factual circumstances as revealed by the accused

---

[6] Recognizing this obstacle to his argument, Appellant asked us at oral argument to overrule this aspect of *Williams*, asserting that it is wrong. We believe that this Court's statement in *Williams* was correct, and we decline to overrule it.

himself objectively support that plea." *Id.* Accordingly, Appellant's third argument does not provide a substantial basis in law and fact for questioning his guilty plea.

## IV. Conclusion

The assigned issue is answered in the negative. The judgment of the United States Army Court of Criminal Appeals is affirmed.

Judge HARDY, concurring.

Appellant pleaded guilty to the charged offense and the majority opinion, which I join in full, rightly holds that the military judge did not abuse his discretion by accepting Appellant's plea. The record makes clear that both the Government and Appellant thought Appellant was guilty of larceny, and the Court rightly affirms the military judge's conclusion that there was "an adequate basis in law and fact" to accept Appellant's plea. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).[1] I write separately only to voice my understanding that this case is not intended to undermine the guidance that this Court has previously given about charging larcenies involving electronic transactions.

This Court's recent precedents advise that the best way to charge a larceny involving an electronic transaction is to "name the person or entity from whom the accused actually obtained the goods or money" as the object of the larceny. *United States v. Williams*, 75 M.J. 129, 134 (C.A.A.F. 2016). We most recently reiterated this point in *United States v. Simpson*, where the Court stated, "the government should generally charge as the *object* of the larceny, the person or entity from whom the accused obtained the goods or money at issue, rather than any person who suffered a loss or consequence as a result of the defendant's actions." 77 M.J. 279, 283 (C.A.A.F. 2018) (citing *Williams*, 75 M.J. at 132–34 (citing *United States v. Cimball Sharpton*, 73 M.J. 299, 301–02 (C.A.A.F. 2014))). Under these precedents, the Government would have been well advised to have named the various gas stations from which Appellant improperly purchased gasoline as the object of Appellant's larceny.

Nevertheless, this Court has also held that—at least in certain circumstances—that is not the only way to charge larcenies involving electronic forms of payment. In *Cimball Sharpton*, we recognized an alternative charging theory in which the entity issuing the electronic payment card (the Air Force in that case) could be the proper entity to allege in the

---

[1] Indeed, Appellant's counsel readily conceded at oral argument that Appellant "did steal fuel, there is no doubt about it." Recording of Oral Argument at 06:08, *United States v. Castro*, No. 21-0017 (C.A.A.F. Mar. 10, 2021).

larceny specification instead of the merchant from which the accused obtained the stolen property. *Cimball Sharpton*, 73 M.J. at 301–02. As the majority explains, however, part of the reason why the Air Force properly could be named as the object of the larceny in *Cimball Sharpton* was that it had a binding contractual obligation to make payments on *all* charges associated with a general purchase card, even if the charges were made without authorization. *Id*. at 300. As we explained in *Williams*, "the agreement between the Air Force and U.S. Bank meant that U.S. Bank (and hence the merchants) would honor any charges made either with apparent or actual authority, and that any wrongful use of the [gas card] by the appellant would wrongfully induce payment by the Air Force." 75 M.J. at 134.

In this case, Appellant stipulated that the Army was required to pay for the unauthorized charges he made on the gas card, but I have reservations as to whether that was actually true. Unlike in *Cimball Sharpton,* there is no evidence in the record of any contract or government policy that would have obligated GSA or the Army to pay for any and all unauthorized or fraudulent charges. To the contrary, the publicly available GSA master contract that governs the use of GSA fuel cards expressly states that GSA "shall not be liable for any unauthorized use including unauthorized transactions."[2] But neither that contract nor any other evidence about the government's obligations with respect to the gas cards appears in the record, and we can hardly fault the military judge for accepting Appellant's uncontradicted pleas to the contrary.

Here, Appellant pleaded guilty and stipulated to the underlying facts that established his guilt. As such, I see no abuse of discretion in the military judge's decision to accept Appellant's plea. But, while there is no basis for upsetting the guilty plea in this case, the Government should understand that it is not at all clear that the evidence proffered in this case would be legally sufficient to support the alternative

---

[2] GSA SmartPay, *GSA SmartPay 3 Master Contract, Terms and Conditions – rev Mod PS-14* § C.3.3.13 Liability, available at https://smartpay.gsa.gov/content/gsa-smartpay-3-master-contract (last visited 5/14/2021).

charging theory for larcenies involving electronic transactions in a future case.